This appeal involves an action under the Alabama Extended Manufacturer's Liability Doctrine and was tried before a jury in the Circuit Court for Calhoun County. Melvin Leo Knighton (plaintiff) received a verdict and judgment in the amount of $225,000.00 for personal injuries sustained on a shuttle welder. Banner Welders, Inc. (defendant), moved unsuccessfully for post-judgment relief under Rule 50, Alabama Rules of Civil Procedure, and then appealed.
Five issues are presented for our consideration by this appeal. They are:
 1. Did the trial court err to reversal by allowing into evidence certain color photographs, offered by plaintiff, which purportedly showed or suggested post-accident safety modifications to the shuttle welder?
 2. Did the evidence establish plaintiff's misuse of the shuttle welder, thereby entitling defendant to a directed verdict?
 3. Did the evidence establish that plaintiff was contributorily negligent, or that he assumed the risk of injury, in his operation of the shuttle welder?
 4. Did the remarks made by plaintiff's counsel during closing argument improperly influence the jury so as to require a new trial?
 5. Did the evidence establish that the shuttle welder had undergone a substantial change between the time of its manufacture and the date of plaintiff's accident, thereby precluding plaintiff from making out a case under the Alabama Extended Manufacturer's Liability Doctrine and entitling defendant to a directed verdict?
We answer the questions posed by these issues in the negative, and we affirm the judgment of the trial court. Each issue will be considered separately.
Plaintiff's original complaint alleged negligence in the failure to provide guards on the shuttle welder to prevent personal injury, and negligence in failing to provide warnings of the danger inherent in it. Subsequently, the complaint was amended to include a count for breach of implied warranty and a count under the Alabama Extended Manufacturer's Liability Doctrine. Defendant pleaded the general issue; contributory negligence; misuse of the product; assumption of the risk of injury; and *Page 444 
other matters not essential to an understanding of this case.
Plaintiff was a shuttle welder operator employed at Universal Products' Bostrom plant in Piedmont, Alabama. On February 11, 1977, he was injured while operating the shuttle welder. The shuttle welder has a moving carriage powered by air pressure. It takes pieces of metal, in this case Jeep seat frames, to different stations for welding. The carriage moves away from the operator, taking the metal pieces to the welding stations. They are then returned to the operator, who removes them. The machine was manufactured by defendant specifically for plaintiff's employer. Defendant's expert witness, Tom Rosenberg, a mechanical engineer and vice-president of manufacturing for Banner Welders, Inc., testified that the shuttle welder was custom built and was unique. Rosenberg acknowledged it was known that at times the welder would jam due to various causes.
Such a jam occurred on the date of the accident. At the time, plaintiff had operated the shuttle welder for three or four months. Plaintiff's testimony revealed that when the jam occurred, plaintiff turned off the master electrical switch. He tried unsuccessfully to dislodge the stuck frame with a three-foot metal pipe which he had previously used successfully for the same purpose. While plaintiff was attempting to unjam the shuttle welder, his supervisor, Bob Adams, came by. Adams instructed plaintiff to use a screwdriver to loosen the frame. He borrowed one from a fellow employee and returned to the shuttle welder. Plaintiff testified that in attempting to dislodge the frame, he kept one foot on the floor, placed his knee over the carriage, and reached up. At that point, apparently, the carriage caught his arm, the frame broke loose, and he was pulled into the shuttle welder. As a result, he broke his hip and wrist, and had to undergo a total hip replacement.
Plaintiff testified that when the accident occurred, the carriage moved toward him, unlike previous occasions when it would not move, or would move away from him. Plaintiff's supervisor testified that even with the air turned off, the machine still could move because of compressed air in the lines. Adams acknowledged that to bleed air out of the lines, a small valve on the side of the machine had to be used. It was disputed at trial as to whether plaintiff was correctly instructed regarding what to do in the event the shuttle welder jammed.
Arnold Martin, a "certified safety professional," testified as an expert witness for plaintiff. Martin explained that at the time of the shuttle welder's manufacture, the state of the art required that in the interest of safety it should have been made with guards on both sides and in the rear to prevent someone from entering it. He also stated that a warning should have been placed on the shuttle welder. He explained as follows:
 The other thing, and probably more hazardous, was decals or a sign should have been placed on the machine to the effect that after the power had been turned off, the electrical power, No. 1, the air system should have been turned off; No. 2, the lines bled, because as long as there was pressure in there, there was a possibility that any part stuck in there would trip the machine when they were unjammed; and, the third thing was that a trained maintenance man, or another trained employee, only should have unjammed the machine.
Subsequent to plaintiff's accident, protective barrier guards were installed on the shuttle welder.
 I. The Color Photographs
Defendant contends that the trial court erred to reversal by allowing certain color photographs, offered by plaintiff, to be admitted into evidence. The basis of defendant's contention is that the photographs showed post-accident modifications to the shuttle welder, which were apparently made for the purpose of making the machine safer. Generally, evidence of subsequent repairs is not admissible to establish negligence, although it may be admissible to show identity of ownership, to show control of the locus, to contradict or *Page 445 
impeach a witness, or to lessen the weight of an expert opinion. Norwood Clinic, Inc. v. Spann, 240 Ala. 427,199 So. 840 (1941). Another permissible use may occur where such evidence is offered to establish a condition existing at the time of the accident. Leeth v. Roberts, 295 Ala. 27,322 So.2d 679 (1975). Defendant contends that the photographs were not admissible under any exceptions to the general rule. Assuming, without deciding, that defendant is correct on that point, we find, with the exception of plaintiff's exhibits one, six, nine, and ten (to which defendant objected at the time they were offered), that defendant failed to preserve error as to the photographs.
Defendant theorizes that it preserved error as to all photographs by its motion in limine, and that an objection to the photographs, at the time they were offered into evidence, was unnecessary. We disagree. At the beginning of trial, defendant orally moved for a motion in limine:
 MR. GAINES: If it please the Court, on behalf of the Defendant, we move for an order in limine, Judge, if that is the way it is supposed to be phrased, and I think it is, and ask the Court to enter an Order preventing or prohibiting the attorneys for the Plaintiff from going into any evidence regarding any change or changes made in the machine in question after this accident; and also, prohibiting them from offering any photographs of the machine showing a changed condition after the accident in question. And, Judge, we believe that we are entitled to this. We believe that the overwhelming law of many jurisdictions is that such evidence is not admissible if any changes are made, whether they are for remedial purposes or precautionary purposes, of taking precautionary measures. Evidence of subsequent steps is not admissible to prove say negligence, I mean any design defects they claim. It is not admissible as evidence of any of the unreasonable danger, dangerous nature, of the machine in question. We have a number of citations, if the Court would like to look at them. We don't believe that the evidence should be admitted in the case, and we ask for an order in limine prohibiting it.
After that, plaintiff and defendant argued their positions to the trial judge, who viewed the disputed photographs and rendered a decision on their admissibility. The judge ruled that some photographs were admissible, that others were not admissible, and that some would be admissible only after objectionable portions were cut off:
 THE COURT: Let her mark them and then I will go get the scissors. On Plaintiff's Exhibit 1, I am going to cut off that part right through there (indicating). And on Plaintiff's Exhibit 2, I am going to cut off that (indicating). On 3, I don't see any problem. No. 4, it is at such a distance that I don't really see any problem. No. 6, there doesn't seem to be any problem. I think that one, No. 7, there is no way to correct it. No. 8 — look at it.
MR. GAINES: That is all right.
 THE COURT: No. 3, No. 6, No. 2, and No. 1, there seems to be no objection. No. 7, first of all, I don't think it is a very good picture and it has got that pole right in the middle of it. I sustain the objection to No. 7. I overrule your objection to 4 and I think that is more of a duplication, No. 5 is. I sustain your objection to 5. As far as 9, 9 will be all right. 10 —
MR. GAINES: I don't even know what that is.
In Acklin v. Bramm, 374 So.2d 1348 (Ala. 1979), this court effectively overruled Bradford v. Birmingham Electric Co.,227 Ala. 285, 149 So. 729 (1933), and held that use of a motion inlimine is permissible in this jurisdiction. Defendant contends that because its motion in limine was granted, it was not required to object again when the photographs were offered into evidence. This court has not previously been called upon to answer this question.[1] Our review *Page 446 
of the facts in this case leads us to conclude that it is unnecessary for us to answer that question. We find defendant's motion inadequate to preserve the error asserted in the absence of objections to the photographs at the time they were admitted into evidence.
The Supreme Court of Iowa has noted the proper use of a motion in limine:
 The motion should be used, if used at all, as a rifle and not as a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial. Since no one knows exactly how the trial will proceed, trial courts would ordinarily be well advised to require an evidentiary hearing on the motion when its validity or invalidity is not manifest from the face of the motion.
Lewis v. Buena Vista Mutual Insurance Association,183 N.W.2d 198 at 201 (Iowa 1971), State v. Garrett, 183 N.W.2d 652 at 654 (Iowa 1971).
More broadly, the Supreme Court of Washington has discussed the considerations applicable to the granting or denying of a motion in limine:
 Taken together, these cases indicate that the trial court should grant such a motion if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn or which may develop during the trial, and if the evidence is so prejudicial in its nature that the moving party should be spared the necessity of calling attention to it by objecting when it is offered during the trial. To enable the court to make such a determination prior to trial and "out of context" the moving party should provide a memorandum of authorities showing that the evidence is inadmissible. If the court does not have the benefit of legal arguments, it can hardly be said to have abused its discretion if it denies a motion asking it to rule on the admissibility of evidence before it knows what the issues and circumstances are. [Citations omitted.]
Fenimore v. Donald M. Drake Construction Company, 87 Wn.2d 85, 549 P.2d 483 at 488 (1976).
Encompassed in the above-quoted authorities is the concept that, as specifically as possible, a motion in limine must apprise the trial court of its object. This is especially true in the case of exhibits which the non-movant may seek to offer into evidence. A broad-based motion which leaves the trial court to speculate as to the motion's object may be insufficient to preserve subsequent error which is not called to the trial court's attention. This is the case here. It is clear from the record that the defendant initially did not object to plaintiff's exhibits one, two, three, and six. Of those, two and three were later entered into evidence without objection. Although, in ruling on defendant's motion in limine, the trial court found plaintiff's exhibit four to be admissible, it was later offered into evidence with defendant's consent. Therefore, defendant cannot allege error as to that photograph. Plaintiff's exhibits five and seven were never offered into evidence. Plaintiff's exhibit eight was offered without objection, which defendant concedes. As to these photographs, defendant failed to preserve error by either failing to object to their introduction or by implicitly waiving objection, as in the case of plaintiff's exhibit four. *Page 447 
The record reveals that the remaining photographs, plaintiff's exhibits one, six, nine, and ten, were objected to by defendant at the time they were offered into evidence. Therefore, we will consider the propriety of the trial court's allowing these photographs into evidence. Defendant's objection to the photographs, and reason for its motion in limine, was that they purportedly showed post-accident modifications to the shuttle welder in the form of guard screens and posts which were later installed. The guard screens and posts were red in color and readily stood out against the background of the shuttle welder, which was dark green. In response to defendant's motion in limine, the trial judge used a pair of scissors to cut off portions of the photographs containing the post-accident modifications. On appeal, defendant contends this was reversible error because that action emphasized to the jury the defendant had something to hide. We cannot agree.
Plaintiff's exhibits originally were color photographs measuring eight by ten inches. Plaintiff's exhibits one, six, nine, and ten, were trimmed along the borders to eliminate the objectionable modifications.[2] The result was four color photographs with dimensions ranging from approximately eight by nine inches, to approximately five by seven inches. We find no error in the trial court's action. This court has often said that where physical evidence or statements contain objectionable matter or references which cannot be separated from the whole, they may, nevertheless, be admitted under proper circumstances. Central of Georgia Railway Company v.Steed, 287 Ala. 64, 248 So.2d 110 (1971); Sims v. Struthers,267 Ala. 80, 100 So.2d 23 (1958); Hunt v. Ward, 262 Ala. 379,79 So.2d 20 (1955); Sims v. State, 253 Ala. 666, 46 So.2d 564
(1950); Pittman v. Calhoun, 233 Ala. 450, 172 So. 263 (1937);Kennedy v. State, 85 Ala. 326, 5 So. 300 (1888). The converse, logically, is true, applying the above-cited cases. Where objectionable matter can be separated from proffered evidence, the objectionable matter may be deleted and the remainder admitted.
We find the case of Rogall v. Kischer, 1 Ill. App.3d 227,273 N.E.2d 681 (1971), authority supporting the trial court's action in trimming the photographs. There, photographs showing damage to plaintiff's automobile were allowed into evidence over defendant's objection. The photographs had "car damage" written on them with arrows indicating the damaged parts of the vehicle. The trial court judge allowed the photographs to be admitted after they were trimmed to remove the writing contained on them. The Illinois Appellate Court sanctioned the trial court's action. Similarly, it upheld the showing of a motion picture to the jury, after excluding certain inflammatory portions. Although Rogall v. Kischer did not involve the issue of trimming a photograph to remove evidence of post-accident modifications or repairs, the same result still applies. Where a photograph depicts objectionable material which is capable of being severed, the remainder of the photograph may be admitted into evidence in the trial court's discretion. The vesting of that discretion in the trial court in the admission of photographs is well established.
 Photographs and testimony are relevant and admissible to help the jury to better understand the persons, object, locale, or conditions in issue. However, relevancy and introduction of both testimony and photographs are within the sound discretion of the trial court. This discretion is *Page 448 
not reviewable in the absence of a gross abuse of that discretion. Costarides v. Miller, 374 So.2d 1335
(Ala. 1979); Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975).
Raines v. Williams, 397 So.2d 86 at 88 (Ala. 1981), quoted with approval in Shiver v. Waites, 408 So.2d 502 (Ala. 1981).
Reviewing photographs trimmed by the trial court, we are unable to conclude that their admission was an abuse of discretion, in light of the above-cited principles. Instead, we find that the trial court wisely exercised its discretion by trimming the photographs and admitting them into evidence. By so doing, the jury was afforded additional views of the shuttle welder to aid them in their resolution of the issues presented at trial.
 II. Plaintiff's Alleged Misuse of the Shuttle Welder
Next, defendant argues that plaintiff did not make out a case under the Alabama Extended Manufacturer's Liability Doctrine and, therefore, it was entitled to a directed verdict. It theorizes that plaintiff misused the shuttle welder by disregarding its safety devices and attempting to dislodge the Jeep seat frame which had jammed. In McCaleb v. Mackey PaintManufacturing Co., 343 So.2d 511 at 514 (Ala. 1977), citing and quoting Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976), this court stated: "The user's misuse of the product constitutes a valid defense under the `extended manufacturer's liability doctrine.'" We further observe that "[o]rdinarily, the conduct of the plaintiff, in his use of an alleged defective product, is a factual issue for the jury." BeloitCorporation v. Harrell, 339 So.2d 992 at 997 (Ala. 1976).
The principles applicable to the granting of a directed verdict are well established.
 A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). In considering a motion for directed verdict, the court must apply Rule 50 (e), ARCP, under which "a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, . . . or a scintilla in support of the theory of the complaint. . . ." Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (Ala. 1975).
 In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236
(1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies of the evidence most favorably to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992
(Ala. 1976).
Caterpillar Tractor Company v. Ford, 406 So.2d 854 at 856 (Ala. 1981).
Assuming, without deciding, that the defense of misuse of the product properly applies to the instant fact situation, we conclude that the evidence was conflicting as to plaintiff's "use" of the shuttle welder. A jury question, therefore, was created. Viewing the evidence in a light most favorable to plaintiff, the jury could conclude that he did not misuse the shuttle welder. Defendant's argument on this issue cannot be a basis for reversal.
 III. Assumption of the Risk and Contributory Negligence
Defendant also argues that the evidence showed plaintiff's actions in unjamming the shuttle welder constituted assumption of the risk, or alternatively, contributory negligence. It insists that the trial court erred by not granting its motion for a new trial. A trial court's granting or denying of a motion for a new trial is largely discretionary. Chavers v.National *Page 449 Security Fire Casualty Co., 405 So.2d 1 at 9-10 (Ala. 1981)(Chavers); ConAGRA, Inc. v. Masterson, 290 Ala. 273 at 279-80,276 So.2d 134 at 140 (1973). In Chavers, this court stated:
 The new trial rule simply permits a trial judge to consider the evidence which was before the jury, weigh it in light of what he observes during the course of the trial, and allow another jury to pass on the case if he is convinced that the jury verdict returned is unjust. It does not, however, where there is some evidence to support the verdict, permit the trial judge to enter a JNOV in favor of the party opposing the verdict. A JNOV is never proper unless it would have been proper to grant a directed verdict in favor of the same party.
Chavers, at 10.
In the instant case there was conflicting evidence bearing on the defenses raised by defendant. The jury could conclude that plaintiff neither assumed the risk, nor was contributorily negligent in his efforts to unjam the shuttle welder. "Verdicts are presumed to be correct and that presumption is strengthened when a new trial is denied by the court." Cooper v. Peturis,384 So.2d 1087 at 1089 (Ala. 1980); Gavin v. Hinrichs,375 So.2d 1063 (Ala. 1979); Elba Wood Products, Inc. v. Brackin,356 So.2d 119 (Ala. 1978). We will not disturb the trial court's ruling on a motion for a new trial unless it is "plainly and palpably erroneous." ConAGRA, Inc. v. Masterson,supra; Shepherd v. Southern Railway Company, 288 Ala. 50,256 So.2d 883 (1970). We cannot reach that conclusion here, and, therefore, we cannot disturb the trial court's ruling and judgment.
 IV. Plaintiff's Comments During Closing Arguments
Defendant argues that during closing arguments, on several separate occasions, plaintiff made highly prejudicial remarks, to which objections were made and sustained. Plaintiff's argument, made by James L. Klinefelter, Esq., and by John R. Phillips, Esq., contained the following remarks.
 MR. KLINEFELTER: "I want to read a quote to you by C.C. Torbert —
MR. GAINES: I hate to interrupt —
 MR. KLINEFELTER: It is not a case; it is just a statement from him about the importance of a Jury.
THE COURT: All right, go on.
 MR. KLINEFELTER: "I think they made more money, more profit —"
 MR. GAINES: We object, Your Honor. That is improper argument.
THE COURT: Sustained.
. . . .
 MR. PHILLIPS: "There is one other thing that is involved in this case, punitive damages. Punitive damages are those damages which the law allows —"
 MR. GAINES: Excuse me. We object to this. There is no grounds for claiming any punitive damages in this case, none whatsoever.
THE COURT: Sustained.
 MR. PHILLIPS: "Now, Banner Welder is not going to live or die on whether you return a verdict in this case. They are a big business, and they make —"
 MR. GAINES: Excuse me again. I hate to interrupt; but that is objectionable. That is not proper argument.
THE COURT: Sustained.
 MR. PHILLIPS: "The art was good enough and known by this company to do exactly what I said they ought to have done. I bet you you couldn't buy one of those Shuttle Welders without getting —"
 MR. GAINES: That is improper argument; and we object.
THE COURT: Sustained.
Defendant contends that the remarks were ineradicable and improperly influenced the jury's verdict. We observe that although defendant objected to plaintiff's remarks, it did not request curative instructions or move for a mistrial. Moore v.State, 364 So.2d 411 at 414 (Ala.Cr.App. 1978), recited the familiar rule concerning preservation of error in improper argument of counsel: *Page 450 
 In the absence of an objection by counsel, a motion to exclude, a ruling on the objection, or a refusal of the trial judge to rule thereon, improper argument or remarks by counsel are not subject for review by this court. Brown v. State, 50 Ala. App. 471, 280 So.2d 177; Veith v. State, 48 Ala. App. 688, 267 So.2d 480; Hutcherson v. State, 40 Ala. App. 417, 114 So.2d 572.
 However, an exception to this rule exists where the comment is so prejudicial that its effect is ineradicable. Anderson v. State, 209 Ala. 36, 95 So. 171; Christian v. State, Ala. 351 So.2d 623; Gunnels v. Jimmerson, Ala. 331 So.2d 247. But, in view of the materiality of the appellant's mental condition, we do not believe that the comment falls within this exception. See Lyons v. State, 53 Ala. App. 111, 298 So.2d 42.
 It is our judgment that, without a timely objection, this court has nothing to consider.
Lawrence v. Alabama Power Company, 385 So.2d 986 (Ala. 1980);Richardson v. State, 354 So.2d 1193 (Ala.Cr.App. 1978).
The question which next arises is whether defendant's alleged error came within the exception to the general rule. We find that it does not. None of the remarks were so invidious that they could not have been cured by requested instructions from the trial court. Nor do we find that the four instances cited from the record, when considered together, cumulatively created ineradicable prejudice. Instead, we find that the error alleged by defendant falls within the situation considered by this court in Prescott v. Martin, 331 So.2d 240 (Ala. 1976):
 We are not of the opinion that the statement in the instant case is so strongly prejudicial as to be beyond cure by the trial court. We also recognize that the trial court has a great deal of latitude in determining the prejudicial effect of statements made in argument. Central of Georgia Railway Company v. Phillips, 286 Ala. 365, 240 So.2d 118 (1970). See also: McClard v. Reid, 190 Tenn. 337, 229 S.W.2d 505, 506 (1950).
 Since the statement was of such a nature that it could be and was cured by the trial court, and since no motion for mistrial was made, there is no error for this court to consider. See, e.g., Montana v. Nenert, (Mo.App. 1950), 226 S.W.2d 394, 400, 401, and Logwood v. Nelson, 35 Tenn. App. 639, 250 S.W.2d 582, 586 (1952).
Prescott v. Martin, at 247. Accordingly, we find defendant's allegation of reversible error to be without merit.
 V. The Allegation of Substantial Change
Lastly, defendant argues that it was entitled to a directed verdict because the evidence showed the shuttle welder had been substantially changed after it left defendant's hands. Defendant points to the fact that the "ground blocks" on the shuttle welder were changed. On cross-examination Bob Adams, a witness for the defense and plaintiff's supervisor, gave the following testimony:
 Q. I will ask you, Mr. Adams, from the time that machine was installed in Piedmont until the time that Mr. Knighton was hurt, did you all modify that welding machine in any manner?
 A. The only thing we changed was the ground blocks on it, because we went to a different type of ground to get a better weld.
Q. But you didn't —
A. That was all.
 Q. You didn't change the carriage or the welding guns?
 A. No, nothing that operates the machine, just the welding is all.
Defendant correctly calls to our attention the fact that to prevail under the Alabama Extended Manufacturer's Liability Doctrine, a plaintiff must establish that the product "was expected to, and did, reach the user without substantial change in the condition in which it was sold." Atkins v. AmericanMotors Corp., 335 So.2d 134 at 141 (Ala. 1976); Casrell v.Altec Industries, Inc., 335 So.2d 128 (Ala. 1976). Defendant theorizes that it is logical to infer *Page 451 
that the change in the ground blocks increased the frequency of malfunctions of the shuttle welder, thereby causing the accident. It concludes that properly, judgment should have been entered in its favor.
We find defendant's argument to be without merit. Plaintiff did establish defendant's liability under the Alabama Extended Manufacturer's Liability Doctrine by showing that the shuttle welder was substantially unchanged at the time plaintiff was injured. Arnold Martin, plaintiff's expert witness, testified on direct examination that the shuttle welder was substantially unchanged at the date of plaintiff's injury. Proximate cause is an element of a products liability action. A plaintiff must prove that his injury resulted from the defective condition of the product. Casrell v. Altec Industries, Inc., at 133. One commentator has observed:
 The question of liability of a manufacturer or seller for injuries sustained by the user of an altered product involves the issue of whether the injuries were proximately caused by a defect in the product as manufactured and sold, or by a defect created by the alteration by the user or a third party.
Annot., 41 A.L.R.3d 1252 at 1253 (1972). In the instant case, we find it to be a reasonable inference that no substantial change occurred to the shuttle welder after its manufacture so as to negate a showing of proximate cause by plaintiff. It is unclear from the record what ground blocks are. Nevertheless, the reasonable inference of the testimony of plaintiff's supervisor is that no substantial change was made to the machine. Plaintiff's expert witness specifically denied that the shuttle welder had changed substantially. Defendant cites no other portion of the record to support its theory. Therefore, we find no error in the trial court's denial of defendant's request for a directed verdict.
For all of the foregoing reasons, we find no reversible error, and we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
[1] Louisville and Nashville Railroad Company v. Phillips,293 Ala. 713, 310 So.2d 194 (1975), superficially appears to have bearing on this question, but closer scrutiny reveals that it does not. There, plaintiff, who was the appellee, secured a favorable ruling on his motion in limine, which later was violated during trial. When defendant attempted to interject subject matter encompassed by the motion, plaintiff moved for a new trial but did not secure a ruling from the trial court judge. Plaintiff's motion for a new trial was granted after the trial concluded. Defendant, who brought the appeal, argued that the granting of a new trial was improper because plaintiff failed to secure a ruling on his motion during trial. This court disagreed, noting the trial court's duty to keep extraneous influences from the jury, and its discretion in granting motions for a new trial. That case is also distinguishable from the instant one because there, the party (plaintiff) who secured a favorable ruling on a motion inlimine was not the party taking an appeal and asserting error on a matter arising out of the trial court's ruling on the application of the motion in limine.
[2] Defendant calls to our attention the fact that plaintiff's exhibit # 9 depicts a red barrier guard in the center of the photograph. It insists the admission of this photograph constitutes reversible error. We note that the photograph in question apparently shows the shuttle welder from a front end view. The red barrier guard is at the rear of the machine, in the background. That part of the photograph is at least partially out of focus. To the extent the barrier guard can be seen, it occupies a very small portion of the photograph even as trimmed. In our opinion, it is unclear whether the barrier guard would be recognized as such in the absence of a viewer's being informed as to what it was. In any event, the photograph would be admissible under the rule (infra) that where an exhibit may contain some objectionable matter, it may, nevertheless, be admitted in the trial court's discretion.