COOK, Justice
(dissenting).
I respectfully dissent from the Court’s order quashing Arnold Shiland’s petition for certiorari review of the judgment of the Court of Civil Appeals affirming the judgment of the trial court. In my view, Shiland presents two compelling grounds for a new trial notwithstanding the fact that the jury returned a verdict in his favor.
On December 6,1991, Shiland was injured in an automobile accident; as a result he sued William Yancey. During jury selection for the trial, Yancey’s attorney used five of six peremptory challenges to remove black veniremembers from the jury. Shiland timely moved to quash the jury panel, which contained five black jurors, on the ground that the defendant’s use of three of his peremptory strikes violated the principles expressed in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the Constitution and laws of Aabama, which principles forbid jury selection based on racial considerations. After a hearing, at which Yancey’s attorney offered explanations for his peremptory strikes, the trial court overruled Shiland’s motion and the trial proceeded.
During Yancey’s cross-examination of Shi-land in the trial that followed, Yancey’s attorney asked: ‘You still go to temple to worship like you always have?” Shiland answered the question in the affirmative, without objection. The jury returned a verdict in Shi-land’s favor for $2065.
Subsequently, however, Shiland sought a new trial, contending that Yancey’s “temple” question had infected the jury with the irrelevant issue of his religion. As an additional ground for a new trial, Shiland reiterated his contention that the jury had been unconstitutionally selected on the basis of race.
The trial court denied Shiland’s motion, and a majority of the Court of Civil Appeals affirmed the judgment. We granted certio-rari review to consider whether Shiland is entitled to a new trial because of (1) Yancey’s use of peremptory strikes to eliminate black veniremembers from the jury, or (2) Yan-cey’s question regarding Shiland’s place of worship. I would reverse the judgment of the Court of Civil Appeals, on both grounds.

I. Jury Selection

Yancey’s use of five of six peremptory strikes to remove black veniremembers from the jury clearly implies that he rejected those five jurors on the basis of race. Shi-land, having thus presented a prima facie case of discrimination, was entitled to explanations for the peremptory strikes.
Yancey challenged veniremember No. 5, because, he said, the veniremember was a fireman, and, he said, “firemen, as a group, [are] active unionists who [are] prone to sue and to award damages.” Shiland v. Yancey, 653 So.2d 989 (Ala.Civ.App.1993).
The rules this Court has developed since Ex parte Jackson, 516 So.2d 768 (Ala.1986), to regulate peremptory challenges teach that *994 rationalizations based on “group bias” — preconceived notions that all members of an ad hoc group share a concrete set of tendencies or characteristics — will not rebut a prima facie case of juror discrimination. Millette v. O’Neal Steel, Inc., 613 So.2d 1225 (Ala.1992); Ex parte Bird, 594 So.2d 676, 680 (Ala.1991); Ex parte Branch, 526 So.2d 609, 624 (Ala.1987). Indeed, the Court of Civil Appeals expressly stated that in relying on this rationale for striking veniremember No. 5, “Yan-cey’s attorney may have failed to present a clear and specific explanation for striking the fireman which this court might accept.” 653 So.2d at 991. It further stated, however: “[W]e are mindful of the great deference afforded the trial court’s findings in this regard, and we do not find clear error.” 653 So.2d at 992. In respect to the deference to be afforded the trial court in this instance, the Court of Civil Appeals erred.
A misapplication of a rule of law to the facts is entitled to no deference on appeal. Gaston v. Ames, 514 So.2d 877, 878 (Ala.1987). Thus, where appellate review is directed to a statement purporting to explain a challenged peremptory strike, which statement, as does this one, merely proffers a reason that this Court has unequivocally rejected, no “factual finding” is involved and the clearly erroneous standard of review is inapplicable. Id. In my view, therefore, the Court of Civil Appeals erred in holding that the unexplained peremptory challenge of veniremember No. 5 did not mandate a new trial when requested by the party objecting to the strikes. See Ex parte Carter, 627 So.2d 1030 (Ala.1993); Ex parte Bird, 594 So.2d at 683.
Moreover, I accord no relevance to the fact that the jury in this case ultimately contained five black members. Although this Court has stated that “the fact that a larger percentage of black veniremembers eventually is seated on a jury raises less suspicion than if a smaller representation is seated and affords less support for a prima facie ease of discrimination,” Ex parte Bird, 594 So.2d at 680, the fact that a large percentage of black jurors sits on the jury does not detract from a prima facie case where a party, through the use of all or virtually all of his available peremptory strikes, has obviously done everything in his power to eliminate black representation. Far more relevant, as a general rule, is the percentage of the striking party’s available challenges — in this case, 83% — that are used to eliminate black veniremembers.
Although I would hold that a new trial is required, based on what I perceive to be the unconstitutional challenge to veniremember No. 5, I take this opportunity also to briefly address Yancey’s challenge to veniremember No. 162. Yancey’s attorney struck venire-member No. 162, because, he said, “when the assembled veniremembers were asked whether they would prefer not to sit on the case, [that veniremember] gave him a look which concerned him greatly, alerting his ‘lawyer’s intuition’ to strike him.” Shiland v. Yancey, 653 So.2d at 991.
Explanations based on such subjective criteria as “gut feelings” or, as in this instance, a “lawyer’s intuition” have, like the one purporting to justify the challenge to venire-member No. 5, been soundly rejected by this Court. See Ex parte Bird, 594 So.2d at 684 (“unarticulated ‘gut feelings’ about a venire-member will not rebut a Branch challenge”).[1] Because the only explanation Yancey proffered for his challenge of veniremember No. 162 was one that has been rejected by this Court as constitutionally deficient, I conclude that this peremptory challenge also violated the Batson principle. Because I conclude that veniremember No. 162 was also unconstitutionally removed from the venire, I would hold that Shiland was entitled to a new trial on this alternative ground.

II. The “Temple” Remark

Shiland contends that Yancey’s question indicating Shiland’s affiliation with the “tem- *995 pie,” was “totally unnecessary, and made purely for the purpose of pointing out that Mr. Shiland is Jewish, which fact ... serve[d] only to excite the prejudice of jurors who might be anti-Semitic.” Ordinarily, this Court will not reverse a judgment and remand the cause for a new trial on the basis of “improper argument or remarks by counsel” unless the party requesting the new trial timely objected to the remarks. Banner Welders, Inc. v. Knighton, 425 So.2d 441 (Ala.1982). “However, an exception to this rule exists where the comment is so prejudicial that its effect is ineradicable.” Id. at 450. Shiland contends that the question posed by Yancey’s attorney falls within this exception, and he insists that, at best, a timely objection would have been useless, and, at worst, would have only exacerbated the effect of the remark. I agree with Shi-land’s contention.
In a number of cases, this Court has held that references to the wealth or race of a party constituted ineradicable error. See, e.g., Allison v. Acton-Etheridge Coal Co., 289 Ala. 443, 447, 268 So.2d 725, 729 (1972) (“ineradicable prejudicial [is] a reference in argument to an opponent’s wealth”); Pryor v. Limestone County, 225 Ala. 540, 540, 144 So. 18, 18 (1932) (reference in argument to the opponent’s wealth was “so poisonous ... as to be almost immune from eradication”); McLemore v. International Union, 264 Ala. 538, 88 So.2d 170 (1956) (irrelevant references to race in closing argument).
In view of the composition of the community in which this trial occurred, Yancey’s gratuitous remark unquestionably suggested to the jury that Shiland was Jewish. Shiland contends that, among other things, the remark served to “excite the prejudice that ... all Jews [are] rich.” Petitioner’s Brief in Support of Petition for Writ of Certiorari, at 4. I do not view that proposition as implausible or improbable. The reference to Shi-land’s attending temple may reasonably be viewed as a back door through which to inject into the jury’s deliberations the “poisonous” issue of the wealth of a party.
More significantly, however, the Constitution of Alabama demands that jury verdicts be rendered without “bias, passion, prejudice, corruption, or other improper motive.” Moore v. Mobile Infirmary Ass’n, 592 So.2d 156, 161 (Ala.1991). It must universally be conceded that of all subjects prone to engender passion or prejudice, religion stands at the top of the list. For this reason, the introduction of religion into litigation must always be constrained within the strictest limits of relevancy and materiality. When those limits are breached, the proper remedy is a new trial, even in the absence of a contemporaneous objection.
I conclude that the limits were breached in this case. In addition, therefore, to the reasons addressed in Part I of this opinion, I would hold that Shiland is entitled to a new trial on the ground that Yancey’s remark about Shiland’s attending temple incurably infected the jury’s consideration of this case on the merits. Unfortunately, the Court has not taken the opportunity presented in this case to address these important concerns. Consequently, I must respectfully dissent.

. I am not unaware of the importance of "body language” in voir dire examinations and the fact that an attorney who “senses” a negative reaction from a veniremember may hesitate, personally, to engage the veniremember in more pointed voir dire out of fear of further alienating the veniremember. As an alternative approach, an attorney desiring to ascertain the basis for perceived negative body language might immediately express this desire to the trial judge and ask the judge to question the veniremember.