This is an appeal by the plaintiffs, Jessie Holland and Marvin Holland, from the trial court's denial of their motion for a new trial following a jury verdict, and judgment thereon, in favor of the defendant, First National Bank of Brewton ("Bank"), in plaintiffs' action for personal injuries and loss of consortium. We affirm.
On November 16, 1984, Jessie Holland rode in an automobile with a friend, Barbara Pugh, to a branch of the Bank they each had business to conduct. Mrs. Pugh parked her automobile in a parking space directly in front of the Bank's front door. The front end of Mrs. Pugh's automobile extended over approximately one-half the width of the sidewalk leading to the Bank's front door. The two women entered the Bank, completed their business, and exited the Bank, returning to Mrs. Pugh's automobile. As they approached the automobile, Mrs. Holland had to step across the edge of a flower bed adjacent to the sidewalk, because the automobile blocked too much of the sidewalk to allow easy passage. In that process, Mrs. Holland sustained a fall, hitting the concrete with her face, body, and legs, suffering severe injuries as a result.
Following her fall, Mrs. Holland and her friend looked around to see what had caused Mrs. Holland to fall. They saw a "pipe" located next to the sidewalk, two to four inches above the level of the sidewalk. This "pipe" was a flagpole holder placed in the flower bed by the Civitan Club with the Bank's permission.
Plaintiffs filed this negligence action against the Bank, seeking compensatory damages for Mrs. Holland's injuries and Mr. Holland's loss of Mrs. Holland's consortium. On the day of trial, the Bank filed a motion in limine, asking the court "to instruct, direct and order each of the plaintiffs, their witnesses and their attorneys, not to mention, refer to, interrogate concerning, argue or mention in any way, either directly or indirectly, during the course of the trial, the fact that the defendant has [since the accident] relocated the American flag holder which is the subject of this litigation . . . without first securing the prior permission of this courtremoved from the hearing of the jury." (Emphasis added.)
The trial court granted the Bank's motion in limine, over plaintiffs' objection. Thereafter, on two occasions during the trial of the case, the plaintiffs attempted to go into, directly or indirectly, the fact that the Bank had relocated the flagpole holder after the occurrence. Plaintiffs were not, however, successful in their attempts. The jury returned a verdict for the Bank, and the trial court denied plaintiffs' motion for new trial. This appeal followed.
The only issue raised by the plaintiffs is stated as follows in their brief:
 "Whether the trial judge committed reversible error by granting the motion in limine of the defendant excluding evidence of movement of the flagpole holder when the evidence was needed to impeach the testimony of witnesses and to show control over the flagpole holder by the defendant." *Page 462 
Plaintiffs conclude their argument on this issue as follows:
 "By granting the defendant's motion in limine, the trial court denied Mr. and Mrs. Holland the opportunity to present probative evidence that would support their case as to the position of the flagpole holder. The plaintiffs strongly contend that this constituted reversible error on the trial judge's part and that the only remedy to that error is to reverse the trial judge's rulings on this motion and remand this case back for a retrial."
No other issues, errors, or grounds for reversal are raised by the plaintiffs.
Plaintiffs concede the general rule that subsequent remedial measures taken by a defendant are inadmissible "as tending to show the defendant's antecedent negligence."Hyde v. Wages, 454 So.2d 926 (Ala. 1984). Plaintiffs, nevertheless, argue that such evidence in this case was due to be admitted under three of the "exceptions" to the general rule, which this Court recognized in Banner Welders, Inc. v.Knighton, 425 So.2d 441, 444-45 (Ala. 1982):
 "Generally, evidence of subsequent repairs is not admissible to establish negligence, although it may be admissible to show identity of ownership, to show control of the locus, to contradict or impeach a witness, or to lessen the weight of an expert opinion. Norwood Clinic, Inc. v. Spann, 240 Ala. 427, 199 So. 840 (1941). Another permissible use may occur where such evidence is offered to establish a condition existing at the time of the accident. Leeth v. Roberts, 295 Ala. 27, 322 So.2d 679 (1975)."
Plaintiffs contend that they should have been permitted to adduce evidence establishing that the Bank moved the flagpole holder subsequent to Mrs. Holland's injury in order to show that the Bank had control over the placement of the flagpole; to show that the scene was different than as depicted in photographs introduced by the Bank for the purpose of establishing the condition of the flagpole holder; and toimpeach the testimony of the Bank's witnesses to the effect that the Bank's photographs accurately depicted the condition of the area as it was on the day of the accident.
The admissibility of evidence of subsequent remedial measures offered for these "other purposes" depends on three factors: (1) whether the "other purposes" arematerial, that is, at issue in the case; (2) whether they arerelevant to the issue, that is, whether the evidence tends to prove the purpose for which it is offered; and (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect. See generally, Gamble and Windle,Remedial Measures Doctrine in Alabama: From Exclusion toAdmissibility and the Death of Policy, 37 Ala.L.Rev. 547 (1986). The burden is on the party seeking to admit evidence of subsequent remedial measures to establish materiality, relevancy, and probative value in excess of prejudicial effect.
In Ex parte Houston County, 435 So.2d 1268, 1271 (Ala. 1983), this Court explained the distinction between an absolute order granting a motion in limine and a preliminary order granting a motion in limine:
 "In some cases an order granting a motion in limine is not absolute, but only preliminary, and the non-moving party may offer the disputed evidence at trial and, if the other party objects and the court sustains the objection, the party offering the evidence may appeal from this ruling.
See C. Gamble, The Motion in Limine: A Pre-Trial Procedure That Has Come of Age, 33 Ala.L.Rev. 1], at 16. The order entered below appears to be of the preliminary sort allowing offers at trial, because it ends with the words 'without further order of this Court.' "
The motion granted in the present case was preliminary, because it ends with the words "without first securing the prior permission of this court removed from the hearing of the jury." Although at trial the plaintiffs attempted on two occasions to go into the matter of the Bank's subsequent remedial measure, in only one instance did they seek to do so on the ground that the matter was material and probative on the *Page 463 
issue of control. On that occasion, the Bank objected to the plaintiffs' offer of proof, and the trial judge stated that he was "not going to let [plaintiffs] get into" the matter of the Bank's subsequent relocation of the flagpole holder because, based on the testimony, he did not "think . . . the defendant ha[d] taken the position [that it] was not in control of the premises." The testimony supports this conclusion by the trial court, and even if we were to determine that plaintiffs have properly raised as error on appeal this ruling by the trial court (see the issue as quoted from plaintiffs' brief, supra), we could not say that the trial court abused its discretion in not allowing the plaintiffs to establish the Bank's relocation of the flagpole for the purpose of showing control. While control was an issue under the plaintiffs' theory of liability, nevertheless, the record supports the trial court's determination that there was simply no evidentiary dispute, on the issue of control; the Bank clearly admitted that it controlled the premises and the location of the flagpole holder.
Plaintiffs further argue that the trial court should have allowed the introduction of the Bank's subsequent remedial measures for the purposes of (1) disputing the accuracy of five photographs of the scene introduced by the Bank, and (2) impeaching the Bank's witnesses who testified that the photographs accurately depicted the condition of the area as it was on the day of the accident. Plaintiffs argue in their brief that "[t]he trial court refused to let [their] attorneys . . . impeach this testimony with evidence that the flagpole holder had in fact been moved and therefore [the scene as depicted in the Bank's photographs] cannot be in the same condition as it was the day of the accident." (Emphasis added.)
However, the record in this case establishes that plaintiffs never sought to admit evidence of the subsequent remedial measure for the above mentioned purposes. The plaintiffs did not attempt to impeach the Bank's witnesses on that basis, nor did they attempt to prove directly, through their own witnesses or their own photographs, that the scene and/or the flagpole holder were not on the day of the accident in the same condition as that depicted in the Bank's photographs. The plaintiffs did endeavor to impeach the Bank's witnesses on various other bases, none of which sought to establish the subsequent remedial measure taken by the Bank. Neither did the plaintiffs make an offer of proof that established in any way that the evidence of the subsequent remedial measure was probative on the issue of the accuracy of the Bank's photographs, nor did they actually make an attempt to impeach the testimony of the Bank's employees that the photographs accurately depicted the scene and/or the condition of the flagpole holder as they were on the day of the accident. Plaintiffs did object to the admission of the Bank's photographs on a number of grounds, but plaintiffs do not raise as an issue on appeal the admissibility vel non of the photographs.
Although in Banner Welders, Inc. v. Knighton, supra, 425 So.2d at 446, the posture of the parties on appeal was different from that of the parties in the present case, we find this Court's analysis in that case applicable here. In Banner, the defendant, in whose favor a "broad-based" motion in limine
had been granted regarding the plaintiffs' photographs "showing a changed condition," argued on appeal that the trial court had erred in admitting certain of plaintiffs' photographs into evidence at trial, notwithstanding his failure to object. As to those photographs, we held that "defendant failed to preserve error by either failing to object to their introduction or by implicitly waiving objection, as in the case of plaintiff's exhibit four." We offered the following rationale in support of this holding:
 "The Supreme Court of Iowa has noted the proper use of a motion in limine:
 " 'The motion should be used, if used at all, as a rifle and not as a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial. Since no one knows exactly how the trial will proceed, trial courts would ordinarily be well advised to require an evidentiary *Page 464 
hearing on the motion when its validity or invalidity is not manifest from the face of the motion.'
 "Lewis v. Buena Vista Mutual Insurance Association, 183 N.W.2d 198 at 201 (Iowa 1971), State v. Garrett, 183 N.W.2d 652 at 654 (Iowa 1971).
 "More broadly, the Supreme Court of Washington has discussed the considerations applicable to the granting or denying of a motion in limine:
 " 'Taken together, these cases indicate that the trial court should grant such a motion if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn or which may develop during the trial, and if the evidence is so prejudicial in its nature that the moving party should be spared the necessity of calling attention to it by objecting when it is offered during the trial. To enable the court to make such a determination prior to trial and "out of context" the moving party should provide a memorandum of authorities showing that the evidence is inadmissible. If the court does not have the benefit of legal arguments, it can hardly be said to have abused its discretion if it denies a motion asking it to rule on the admissibility of evidence before it knows what the issues and circumstances are. [Citations omitted.]'
 "Fenimore v. Donald M. Drake Construction Company, 87 Wn.2d 85, 549 P.2d 483 at 488 (1976).
 "Encompassed in the above-quoted authorities is the concept that, as specifically as possible, a motion in limine must apprise the trial court of its object. This is especially true in the case of exhibits which the nonmovant may seek to offer into evidence. A broad-based motion which leaves the trial court to speculate as to the motion's object may be insufficient to preserve subsequent error which is not called to the trial court's attention. This is the case here."
(Emphasis added.) 425 So.2d at 446.
That analysis applies equally to this case, where the non-moving party seeks to admit evidence at trial which has been excluded by a preliminary motion in limine. (See Ex parteHouston County, supra.) In this instance, in order to preserve as error the trial court's refusal to admit such evidence, theparty against whom the preliminary motion in limine has beengranted must attempt to offer the evidence and provide adequatelegal arguments to enable the trial court to make a ruling asto its admissibility for the limited purpose sought. This was not done in this case with respect to the impeachment value of evidence that the Bank had relocated the flagpole holder. The record shows only one instance where plaintiffs' counsel attempted to make an offer to prove the relocation of the flagpole holder:
 "[Plaintiffs' Counsel]: May it please the court, I would like to offer to show by the witness Mr. Still, officer of the defendant, that subsequent to the accident that he directed that the pipe, pole, stob, flag holder or whatever we are going to call it, was removed under his direction.
". . .
 "There had been photographs introduced into evidence, Defendant's Exhibits 1 through 5, which show a pipe in place. The time and date of these photographs have not been authenticated.
 "We would be entitled to show that the pipe could have possibly been removed from the time of the accident to the time of these photographs.
 "And for the above reasons we feel like we ought to be entitled to go into it and we make that offer of proof."
However, in making the above offer of proof, plaintiffs' counsel made no arguments to explain how the fact that the flagpole had been relocated tended to prove that the Bank's photographs inaccurately depicted the condition of the scene and/or the flagpole holder at the time of the accident. Plaintiffs' counsel pointed out that *Page 465 
the time and date of the photographs had not been established. In order for the relocation of the holder to have been relevant on the question of the accuracy of the photographs, plaintiffs' counsel would have had to offer to show that the photographs were in fact taken after therelocation.
Furthermore, even if plaintiffs had made a showing establishing the materiality and relevancy of the evidence of the Bank's relocation of the flagpole holder for the purpose of impeaching the accuracy of the Bank's photographs and the testimony of the Bank's witnesses, it is, nevertheless, apparent from this record that there were other ways for plaintiffs to establish that the scene depicted in the Bank's photographs was a "reenactment," and/or that the scene depicted in the photographs was inaccurate (i.e., that the photographs depicted the conditions of the scene differently from the way they were on the day of Mrs. Holland's fall). Indeed, Mrs. Holland herself and Mrs. Pugh could have given testimony to that effect. Moreover, plaintiffs' counsel could have offered his own photographs which might have more accurately depicted the scene and the conditions as they were on the day of the accident. Thus, the trial court in its discretion may have determined that the probative value of the evidence that the Bank relocated the holder was outweighed by its inherently prejudicial effect.
For the foregoing reasons, we cannot say the trial court abused its discretion in either granting the motion in limine
or in disallowing the evidence at trial for the purposes plaintiffs now offer to this Court.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.