This is an appeal from a judgment based on a directed verdict in favor of defendant Dudley Carver and a jury verdict in favor of defendant Flying Wheels Motorcross Club ("Flying Wheels").
The record reveals that in August 1985 David Ray Brown took his wife and son to motorcross races sponsored by Flying Wheels. Carver was an officer of the Flying Wheels Club. While motorcross races were being held on the motorcross track, "hare-scramble" races were being conducted on trails through the woods near the motorcross track.[1] The evidence tended to show that periodic announcements were made over the public address system regarding the status of the hare-scramble races; however, Brown contended that he never heard them. In addition, there was evidence that someone at the front gate gave out instructions regarding where the hare-scramble races were being held. Brown denied receiving such instructions.
After the Browns had been at the races for approximately 30 to 45 minutes, Brown allowed his son to take his "dirt bike" to the western side of the ridge (where the hare-scramble race was being conducted). After his son had been gone for about 30 minutes, Brown, noticing activity in the area where he thought his son was riding, became concerned for his son and went to find him. Brown took his bike onto the trails where the hare-scramble race was being conducted and headed in a direction opposite that in which the race participants were riding.[2] Subsequently, Brown collided with a race participant; the collision resulted in the death of the other party and in injury to Brown. Thereafter, Brown sued Flying Wheels and Dudley Carver, alleging negligence and wantonness on the part of both defendants in conducting the hare-scramble races. Brown's wife also sued, claiming damages for loss of consortium. The trial judge granted Carver's motion for directed verdict at the close of the Browns' case, and the jury returned a verdict in favor of Flying Wheels. A judgment was entered accordingly. The Browns appeal. We reverse and remand.
 I.
Brown's first argument is that the trial court erred in directing a verdict in favor of Dudley Carver. We agree. Carver contends that Brown offered absolutely no evidence at trial that Carver, in his individual capacity, should be liable for damages based on Brown's accident. He argues that the evidence clearly shows that Carver was acting in his capacity as an officer of Flying Wheels and that Carver at no time exceeded his authority or assumed responsibility for the races on the date in question beyond his responsibilities as a member of the club. While the evidence shows that the entire club was responsible for safety during the races, and that that responsibility was not given solely to Carver, we note that if the club was responsible for safety, then Carver, as one of its members, was also responsible. There could be no finding of liability against Flying Wheels unless one or more of its members committed acts resulting in that liability. There was evidence that Carver was in charge of the hare-scramble races on the date in question. There was also evidence tending to show that he appreciated the risks involved, because he warned the participants to be careful to watch for trucks or horses that might wind up on the race track. In light of this evidence, we conclude that the trial judge erred in directing a verdict in favor of Carver. In fact, because the duty owed by Carver and the duty owed by Flying Wheels are so closely intertwined, the judge's directed verdict in favor of Carter mandates the reversal of *Page 315 
this case for a new trial as to Flying Wheels, as well as to Carver.
Because the remaining issues raised by the appellant will also become issues in the new trial, for the sake of expediency, we will address them.
 II.
Brown also argues that he should have been allowed to present evidence of subsequent remedial measures for the purpose of impeaching Dudley Carver's testimony that "[e]very conceivable thing we thought we could do we did to keep somebody from getting hurt."
 " 'Generally, evidence of subsequent repairs is not admissible to establish negligence, although it may be admissible to show identity of ownership, to show control of the locus, to contradict or impeach a witness, or to lessen the weight of an expert opinion. Norwood Clinic, Inc. v. Spann, 240 Ala. 427, 199 So. 840 (1941). Another permissible use may occur where such evidence is offered to establish a condition existing at the time of the accident. Leeth v. Roberts, 295 Ala. 27, 322 So.2d 679 (1975).' "
Holland v. First National Bank of Brewton, 519 So.2d 460, 462, (Ala. 1987), quoting Banner Welders, Inc. v. Knighton,425 So.2d 441, 444-45 (Ala. 1982). While we acknowledge that evidence of subsequent remedial measures is often admissible for impeachment purposes, id., see also, Stauffer Chemical Co.v. Buckalew, 456 So.2d 778 (Ala. 1984), the determination of whether to allow such evidence is within the discretion of the trial judge, after considering several factors; we have written:
 "The admissibility of evidence of subsequent remedial measures offered for these 'other purposes' depends on three factors: (1) whether the 'other purposes' are material, that is, at issue in the case; (2) whether they are relevant to the issue, that is, whether the evidence tends to prove the purpose for which it is offered; and (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect. See generally, Gamble and Windle, Remedial Measures Doctrine in Alabama: From Exclusion to Admissibility and the Death of Policy, 37 Ala.L.Rev. 547 (1986). The burden is on the party seeking to admit evidence of subsequent remedial measures to establish materiality, relevancy, and probative value in excess of prejudicial effect."
Holland v. First National Bank of Brewton, 519 So.2d 460, 462
(Ala. 1987).
It is obvious to us from the evidence that the trial judge did not abuse his discretion, because there were other ways for Brown to establish that other safety measures could have been taken by Flying Wheels. In fact, evidence of other measures was indeed offered at trial. Therefore, "the trial court in its discretion may have determined that the probative value of the evidence . . . was outweighed by its inherently prejudicial effect." Id., at 465. For this reason, we find no error.
 III.
Brown additionally argues that the trial court erred in refusing to allow certain testimony of an investigator who had interviewed several club members. Brown attempted to offer testimony of what those club members told the investigator they had told Brown when he entered the gates on the date in question. An example of the type of evidence Brown tried to have admitted is set forth below:
"Q. Did you talk with Mrs. Jackson?
"A. Yes sir, I talked with Mrs. Jackson.
"Q. Ann Jackson?
"A. Yes.
"Q. Do you know what she had to do with the Club?
"A. Admission receiver at the gate.
 "Q. She took up money when people came to see the motorcross race?
"A. Yes.
 "Q. Do you remember anybody telling you that she had warned Mr. Brown or anyone like that, that there was a hare-scramble race going on in the woods, not to go over there?
 "[Attorney for Flying Wheels]: Hearsay, Your Honor. We would object to that. *Page 316 
 "[Brown's attorney]: Hearsay, Your Honor, — my question is directed to people associated with this Club now is what I'm talking about, Mrs. Brown, Mr. Carver.
 "Q. Did anybody like that tell you that they had warned Mr. Brown or anybody not to go over there in the woods, that there was a hare-scramble race going on?
"A. No.
 "[Attorney for Flying Wheels]: Your Honor we move to exclude the answer and object that it is hearsay. . . .
". . . .
"[The Court]: I sustain the objection
 "Q. [By Brown's attorney to the investigator]: Did you talk with Mrs. Jackson?
"A. Yes, sir.
 "Q. Does your report reflect anything she told you as pertaining to warnings?
 "[Attorney for Flying Wheels]: Object to what his report reflects your honor. That's hearsay as well. Same objection.
"[The Court]: I sustain."
Brown contends that this testimony should have been allowed for the purpose of indicating notice, or lack thereof, of the fact that a hare-scramble race was in progress and where it was being conducted. Brown cites C. Gamble, McElroy's AlabamaEvidence § 273.02 (3d ed. 1977) as authority:
 "If it is material to prove that a person at a specified time had been put on notice about a matter, or entertained a specified belief, acted in good or bad faith, had a specified motive to do or not to do an act or to do an act with a specified motive, or was mentally deranged, proof that a statement was made to him prior to the time in question which was reasonably calculated to create, and which is offered for the purpose of showing notice, belief, good or bad faith, motive or mental derangement is not violative of the Hearsay Rule."
(Footnotes omitted.) In the present case, Brown offered the investigator's testimony not to prove notice, but to prove a lack thereof. In fact, from the record, it is not clear that the investigator ever even asked if instructions were given; rather, the only evidence being offered, as far as we can tell, is that club members did not volunteer to the investigator whether instructions were in fact given. Clearly, this does not fall within the above exception.
 IV.
Brown's final contentions are that the trial court erred in giving jury instructions on the duty owed an invitee when that invitee has exceeded the scope of the invitation and that it erred in instructing the jury with regard to certain actions taken by the motorcross club that was the predecessor to Flying Wheels. Neither of these arguments has any merit, and our review regarding them reveals no error on the part of the trial court.
For the foregoing reasons, the judgment is due to be, and it hereby is, reversed and remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES and KENNEDY, JJ., concur.
[1] A hare-scramble race, in this instance, is a race that meandered on trails through the woods. The approximate distance of the race was 11.9 miles, and it began and ended at the motorcross track.
[2] Brown maintains that he was unaware that the race was going on.