Phar-Mor, Inc., the defendant in this negligence action, appeals, contending that the trial court erred in admitting photographs taken at the time of the trial that Phar-Mor says showed subsequent remedial measures.
This action arose out of an accident that occurred at a Mobile Phar-Mor store. Mrs. Edna Goff allegedly fell when her foot was caught under a display basket in the store. She alleges that Phar-Mor negligently or wantonly maintained the aisles of the store in an unreasonably dangerous condition, negligently or wantonly failed to maintain the aisles in a reasonably safe condition, negligently or wantonly placed displays and/or other objects in the aisles of the store that she and other business invitees of the defendant would reasonably be expected to traverse, and negligently or wantonly failed to warn her of dangerous conditions existing in the aisles of the store. She alleges that the negligence or wantonness of Phar-Mor, Inc., was the proximate cause of her injuries. Her husband, Dan Goff, joined the action, claiming loss of Mrs. Goff's services and consortium.
The Goffs allege that Mrs. Goff fell because of an unsafe condition in the store, namely, a display basket set up to show certain merchandise. The Goffs allege that the basket was set up so that protruding wire prongs located on the bottom (in the toe space) could "snag" a person's foot. Phar-Mor contends that the basket was set up according to the manufacturer's instructions and that it was not aware that the basket presented a dangerous condition. Phar-Mor presented evidence that showed that the proper manner to set up the basket was with the metal legs, which the Goffs call "protruding wire prongs," supporting the basket, which was how the basket was set up at the time Mrs. Goff fell.
The Goffs called as their first witness Michael Broughton, the store manager. Broughton was called as an adverse witness. He testified that the basket Mrs. Goff allegedly caught her foot under had been erected in accordance with the manufacturer's instruction. He testified that, when erected, the basket rested upon metal legs, which created a toe space underneath the basket. He also testified that the basket could be set up to eliminate the toe space.
During the trial, the Goffs' counsel moved to be allowed to take pictures of the Phar-Mor store where the accident occurred, to show that the baskets were at that time being used upside down and on pallets. The trial court allowed this, over the objection of Phar-Mor. The next day the Goffs introduced the time-of-trial photographs into evidence, again over the objection of Phar-Mor, for the express purpose of proving feasibility and proving product misuse. The jury verdict was for the Goffs.
The Goffs alleged that Phar-Mor negligently or wantonly failed to maintain its premises in a reasonably safe condition. In order to prevail, the Goffs had to show that the premises were not in a reasonably safe condition and that Phar-Mor knew or should have known of the unsafe condition.
 "Storekeepers . . . have a duty to exercise reasonable care in providing and maintaining reasonably safe premises for the use of their customers. The storekeeper is not an insurer of the customer's safety, but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition. The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of his servants or employees. Actual or constructive notice of the presence of the offending substance or condition must be proven before the proprietor can be held responsible for the injury."
Clayton v. Kroger, 455 So.2d 844, 845 (Ala. 1984).
The issue on appeal is whether the trial court erred in admitting the time-of-trial *Page 1216 
photographs over Phar-Mor's objection that the photographs were inadmissible as evidence of subsequent remedial measures offered to prove prior culpable conduct.
"It is axiomatic that rulings as to the admissibility of evidence rest largely within the discretion of the trial court. Such rulings will not be disturbed on appeal in the absence of a gross abuse of discretion." Russellville Flower Craft, Inc.v. Searcy, 452 So.2d 478, 480 (Ala. 1984). In this case, the trial court's discretion is circumscribed by the well established rule that subsequent remedial measures are not admissible to prove antecedent negligence or culpable conduct.
The general rule excluding evidence of subsequent remedial measures is that "evidence of repairs or alterations made, or precautions taken, by the defendant after the injury to the plaintiff in an accident [are] not admissible as tending to show the defendant's antecedent negligence [or culpable conduct]." Charles W. Gamble, McElroy's Alabama Evidence § 189.02(1) (4th ed. 1991) (citing Macon County Comm'n v.Sanders, 555 So.2d 1054 (Ala. 1990); Hyde v. Wages,454 So.2d 926 (Ala. 1984); Banner Welders, Inc. v. Knighton,425 So.2d 441 (Ala. 1982)). Under the rule, subsequent remedial measures have been excluded on two grounds: (1) that evidence of a subsequent repair or change was irrelevant to show antecedent negligence, see Hart v. Lancashire Yorkshire Ry., 21 L.T.R. 261, 263 (1869), cited in Comment, The ImpeachmentException to Rule 407: Limitations on the Introduction ofEvidence of Subsequent Measure, 42 U.Miami L.Rev. 901, 903 (1988); see also Proposed Rules of Evidence, 46 F.R.D. 161, 236
(1969); and (2) that public policy favored promoting safety by removing the disincentive to repair, see Alabama Power Co. v.Marine Builders, Inc., 475 So.2d 168, 171-72 (Ala. 1985); seealso Probus v. K-Mart, Inc., 794 F.2d 1207, 1210 (7th Cir. 1986). Even though the rule was established to exclude evidence of subsequent remedial repairs or alterations, evidence of such repairs or alterations can be introduced for certain purposes other than proving antecedent negligence or culpable conduct:
 " '[E]vidence of subsequent remedial repairs . . . may be admissible to show identity of ownership, to show control of the locus, to contradict or impeach a witness, or to lessen the weight of an expert opinion. Norwood Clinic, Inc. v. Spann, 240 Ala. 427, 199 So. 840 (1941). Another permissible use may occur where such evidence is offered to establish a condition existing at the time of the accident. Leeth v. Roberts, 295 Ala. 27, 322 So.2d 679 (1975).' "
Holland v. First National Bank of Brewton, 519 So.2d 460, 462
(Ala. 1987) (quoting Banner Welders, Inc. v. Knighton,425 So.2d 441, 444-45 (Ala. 1982)).
In Holland, this Court established a three-factor test for the admissibility of evidence of subsequent remedial measures offered for "other purposes":
 "The admissibility of evidence of subsequent remedial measures offered for these 'other purposes' depends on three factors: (1) whether the 'other purposes' are material; that is, at issue in the case; (2) whether they are relevant to the issue, that is, whether the evidence tends to prove the purpose for which it is offered; and (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect. The burden is on the party seeking to admit evidence of subsequent remedial measures to establish materiality, relevancy, and probative value in excess of prejudicial effect."
Id. at 462 (citing Charles W. Gamble and Gwen L. Windle,Remedial Measures Doctrine in Alabama: From Exclusion toAdmissibility and the Death of Policy, 37 Ala.L.Rev. 547 (1986)).
The record here reflects that Phar-Mor objected to the Goffs' request to the trial court that they be permitted to "photograph the display basket as [it was] at the time of trial." Later, Phar-Mor moved for a mistrial, and the following discussion was had on the record:
"THE COURT: All right. Mr. Carr, what do you have? *Page 1217 
 "MR. CARR: A motion for mistrial in violation of subsequent remedial measures.
"THE COURT: Violating what?
 "MR. CARR: Subsequent remedial measures. [The Goffs' attorney] did an excellent job trying to set it up so that he could argue it with something else, but it is clear and if it was anything other than that I challenge him to tell me.
 "MR. CUNNINGHAM: I can tell you exactly what it is. If you assume it's a subsequent remedial measure, once the witness denies that it is feasible, you are then permitted to talk about it all day long. Once he says it can't be done that way, if you've got evidence that in fact they did it that way, it comes into evidence, number one. Number two, it's not a subsequent remedial measure, it's misuse of a product, they misused the product. They had it upside down and that's the point of my —
 "THE COURT: You know, that's what I thought he was talking about.
 "MR. CARR: [Broughton] did not say it wasn't feasible, first. Second, it is no evidence that it's misuse of products — They could have sued the manufacturer if they thought there was some problem or something with that, but —
 "MR. CUNNINGHAM: Not if you're putting it upside down.
"THE COURT: All right. Motion denied."
The trial court allowed the photographs taken at the time of trial to come into evidence. The Goffs' attorney argued the following in closing argument:
 "Let me put it this way. If we had tried this case and the only evidence you had seen, and the only evidence you had heard about were these photographs [meaning the photographs taken by Mr. Goff shortly after the incident], you would have never known and probably like me would have never figured out that you can pull the bottom out of the basket, turn it over, stick it back in and use it for the same purpose without any hazard there. You would have never known that. And would it be the same case without knowing that? Would you be deciding this case on complete evidence without you knowing that? And I suggest to you that if we hadn't brought that fact to your attention that the baskets out there now are precisely the opposite of what they were at the time of this accident, you would have never known it because Phar-Mor wasn't about to tell you that. And if you believe that Mr. Broughton didn't know when he testified yesterday how they use those baskets now, where the hazard is eliminated, that he is just totally unaware of that, I have trouble believing that. He had to have been aware of it. They had to have been aware of it. And as long as everybody just kept riding down that same railroad track without ever knowing that they used them the other way this case would have been decided without some very significant important evidence; which shows an appreciation on their part and knowledge on their part that it needed to be in a condition and set up in a way where nobody could get caught up in it. And now the store doesn't have that hazard in it. And now nobody is going to trip in it. But that's not the way it was at the time this lady suffered her fall, the way it should have been but not the way it was and that's not her fault. It's not her fault."
(Emphasis supplied.)
On appeal Phar-Mor argues that the evidence was not properly admitted to show feasibility or product misuse. The Goffs contend on appeal that the photographs are not evidence of subsequent remedial measures or, in the alternative, that they were offered to impeach the testimony of Broughton.
The Goffs argue that the photographs do not show a subsequent remedial measure because Broughton testified that Phar-Mor used the baskets upside down in order to put heavier objects in the baskets. However, in closing argument the Goffs' attorney stated that the photographs showed "an appreciation on their part and knowledge on their part that it needed to be in a condition and set up in a way where *Page 1218 
nobody could get caught up in it." Obviously the Goffs cannot argue both ways. Either changing the way the baskets were set up made them safer or it did not. If the subsequent change made the condition safer, that subsequent change cannot be used to prove that the condition was unsafe before. This is the basic exclusionary rule, which prohibits the admission into evidence of subsequent remedial measures except for a qualified purpose. It is undisputed that using the baskets up on pallets and upside down with the legs on top made the baskets safer, because when they were in that position a person's foot could not get caught under them; therefore, we hold that this use of the baskets cannot be used against Phar-Mor to prove its alleged antecedent negligence.
As stated before, evidence of subsequent remedial measures cannot be used to prove prior culpable conduct. However, it can be used for other purposes. The Goffs raise three other purposes: (1) product misuse, (2) feasibility, and (3) impeachment.[1]
Evidence of a subsequent remedial measure offered for "other purposes" must be material and relevant, and its probative value must outweigh its prejudice. In order for a purpose to be material, the purpose must be at issue; that is, it must be essential to the cause of action and it must be controverted.
The Goffs, at trial, raised the issue of product misuse by Phar-Mor. Phar-Mor introduced evidence, which was not disputed, that the basket the Goffs alleged had caused Mrs. Goff's fall was set up according to the manufacturer's instruction at the time of Mrs. Goff's fall. Therefore, the fact that Phar-Mor at the time of trial had some baskets set up in a manner contrary to the manufacturer's intended use is not material to the case at hand.
The uncontroverted evidence shows that on the day of Mrs. Goff's fall the basket she alleged caused her fall was erected in accordance with the manufacturer's instructions. Therefore, there is no controverted issue of product misuse of the basket by Phar-Mor.
At trial the Goffs also asserted that the time-of-trial photographs were being introduced to show feasibility. However, contrary to the argument of the Goffs, feasibility was never controverted. Phar-Mor never claimed that the baskets could not be set up in a manner different from the manner in which they were set up the day of Mrs. Goff's fall. Moreover, Broughton, Phar-Mor's representative, testified that the baskets could be used upside down from the way they were intended to be used, but that he was not aware of any baskets set up in that manner. This obviously does not put into controversy whether it was feasible to use the baskets upside down. Therefore, the photographs were not admissible to show feasibility, because feasibility was not controverted.
On appeal the Goffs argue that the photographs were admissible to impeach the credibility of Broughton's testimony. Broughton was called as an adverse witness by the Goffs. During his testimony he stated that the basket involved was not upside down and that he was not aware of any baskets that were being used upside down at the time of trial. The Goffs argue that photographs of the baskets turned upside down at the time of trial are sufficient to impeach the credibility of Broughton's testimony.
The trial court gave the Goffs the opportunity to show that the basket could be used upside down. Broughton admitted that it was possible to eliminate the toe space underneath by placing the basket up on a pallet and erecting it upside down. *Page 1219 
He merely stated that he was unaware of any baskets being used upside down.
This Court recently stated in Blythe v. Sears, Roebuck Co.,586 So.2d 861 (Ala. 1991), that the trial court must apply the impeachment exception with care so that the exception does not swallow the rule. In so holding, we established that in order to impeach the credibility of a witness through the introduction of a subsequent remedial measure, the testimony providing grounds for impeachment must have been initiated by the witness. Id.
The impeachment exception to the exclusionary rule was created to prevent a defendant from gaining an unfair advantage from self-serving, false, or misleading statements that would go unchallenged under the exclusionary rule. Id. Because the exception arose in order to protect a plaintiff from an aggressive defendant attempting to manipulate the exclusionary nature of the rule for his own advantage, it follows that a plaintiff who is on the offensive should not be allowed to manipulate the impeachment exception in order to introduce evidence for purposes otherwise inadmissible. In such a situation, the defendant is in greater need of protection than the plaintiff who is seeking to prove the defendant's negligence under the guise of impeachment.
In this case the Goffs repeatedly asked Broughton questions seemingly pointed toward setting up the introduction of the subsequent remedial measure. Consider the following excerpt from the Goffs' examination of Broughton:
 "Q. — You're telling this jury under oath, sir, that you haven't known since day one in this case, since all these photographs that were taken down at the lawyer's office, since it's been set up over in that corner over there, and the entire time you've been testifying here in front of this jury you have known, sir, haven't you, that the basket in the photograph that Mrs. Goff tripped on was upside down; wasn't it?
 "A. No, sir, it's not and I can show you the pictures today.
"Q. These aren't handles?
"A. No, sir, they're not.
"Q. They're not?
"A. No, sir.
 "Q. And in this position you know that there is no way anybody can get their foot under there and get caught under the snags; don't you?
 "A. There is no way you can get your foot under that. It's not the right way to use them and I can show you a picture today and would be glad to.
"Q. It's not the right way to use them?
"A. Pardon me?
 "Q. You're telling this jury under oath that's not the right way to use them?
 "A. This [the basket with the legs on top] is not the right way to use them, no.
 "Q. All right. Well, then you wouldn't mind if I sent somebody out to Phar-Mor today to take photographs of every basket that you've got set up out there and bring them back down here tomorrow and show them how you've got them set up; would you?
 "A. I think we've only got six or seven in the store.
 "Q. But you wouldn't mind me going out there, sending somebody out there and getting photographs of every one of them and bringing them down here and showing the jury how you actually use the baskets; would you?
 "A. To get permission for you, that's fine with me.
 "Q. All right, sir. And what we would see is baskets set up just like this up and down those aisles out there; wouldn't we?
"A. No, sir.
"Q. We wouldn't?
"A. No, sir.
 "Q. Are you testifying under oath that there are not a number of baskets set up just like this out there?
". . . .
 "A. I don't believe there are any baskets in the store that are set up like this at this time.
"Q. You don't?
 "A. I can only think of six in the store that we're using at this time.
 "Q. And the ones that you have out there that are set up the way you had *Page 1220 
this one set up are set up on wooden pallets up off the floor; aren't they, where nobody can get their foot in any snag underneath the basket?
 "A. The ones we've got out there right now are on pallets, if we have any out there.
 "Q. The ones that aren't on pallets — I want to be sure I understand your testimony because I'm going to ask the Court's permission to go out and photograph every basket you've got out there — You're telling this jury that they are not set up as I have shown right here?
 "A. I don't believe there's any baskets out there at all like that."
In their brief, the Goffs argue that Broughton "categorically denied that Phar-Mor was using the basket upside down at the time of Mrs. Goff's fall." Broughton did deny that Phar-Mor was using the basket upside down and did produce evidence that Phar-Mor, at the time of Mrs. Goff's fall, was using the basket in accordance with the manufacturer's instructions and that such utilization indicated that the baskets were not upside down. The Goffs did not dispute this evidence. From the testimony quoted above, it appears that the Goffs alleged that the basket was upside down when Mrs. Goff fell. The undisputed evidence shows it was not.
The statements the Goffs claim they sought to impeach were statements elicited by the Goffs from Phar-Mor's representative, Broughton. However, the rule is an exclusionary one. If the evidence is offered to prove prior culpable conduct, it is inadmissible. In his closing argument, the Goffs' counsel described the time-of-trial photographs as "very significant important evidence; which shows an appreciation ontheir part and knowledge on their part that it needed to be ina condition and set up in a way where nobody could get caughtup in it." (Emphasis supplied.) Clearly, the Goffs used the photographs to argue that the mere existence of the baskets, at the time of trial, being used upside down and on pallets, was sufficient to show that Phar-Mor appreciated the danger posed by using the baskets as the manufacturer intended. This appreciation of the danger is the keystone of premises liability. Therefore, the introduction of subsequent remedial measures to prove this point was improper.
Furthermore, we cannot hold that the evidence was properly admitted for any other purpose. Although we recognize that the decision whether to admit evidence rests largely with the trial court and that its ruling will not be disturbed on appeal in the absence of a gross abuse of discretion, we hold that the trial court committed reversible error in allowing the Goffs to introduce photographs of the baskets as they were being used at the time of trial. At trial, the Goffs offered the evidence to prove feasibility and product misuse; these issues were not material in this case, because they were not controverted. On appeal the Goffs argue that the evidence was offered to impeach Broughton. This impeachment evidence was inadmissible, because the statement sought to be impeached was not initiated by the witness.
Because we must reverse based on this evidentiary issue, we pretermit discussion of the other issues raised. The judgment based on the verdict in favor of the Goffs is reversed, and the cause is remanded for a new trial.
REVERSED AND REMANDED.
MADDOX, ALMON, HOUSTON, and STEAGALL, JJ., concur.
[1] Product misuse and feasibility were raised in the trial court in response to Phar-Mor's objection. Impeachment as a ground for admitting the time-of-trial photographs is raised for the first time on appeal. This Court has long held that "if there is a purpose for which offered evidence is admissible, the trial court's admission [of] the evidence is not error, even though the evidence was offered for an improper purpose." Simsv. Struthers, 267 Ala. 80, 87, 100 So.2d 23, 29 (1957) (opinion extended on rehearing). Therefore, the Goffs can argue here a different ground for admitting the evidence and, if the evidence was admissible to impeach Broughton, the trial court's admission of the photographs will not be reversible error.