The dispositive issue on appeal is whether the trial court erred to reversal by allowing plaintiff to introduce into evidence plaintiff's Exhibit No. 11, and accompanying testimony, concerning modifications and safety procedures made by the defendant following plaintiff/employee's injury, and plaintiff's Exhibit No. 16, and testimony concerning the exhibit, which dealt with accidents at other companies which occurred after the date of the accident made the basis of this action. Because we conclude that the trial court erred by admitting Exhibit No. 11 and Exhibit No. 16, we reverse and remand this cause for a new trial. Consequently, we find it unnecessary to discuss the other issue raised on this appeal, i.e., whether plaintiff's action in releasing the defendant Vulcan Iron Works, Inc. also released any and all claims he had or might have had against these defendants.
On May 27, 1975, Robert Wages, plaintiff-appellee, was injured while working at the Universal Atlas Cement Company in Leeds, Alabama. He was injured while repairing brick inside a rotary cement kiln, that was approximately 300 feet long and 10 feet in diameter.
In manufacturing cement, slurry, a liquid material, is fed into the kiln, which is slightly tilted and rotates clockwise to facilitate the slurry's flow. As the slurry goes through the kiln, it is heated to a temperature of 2600 degrees Fahrenheit and changes to a dry product. During this process, a portion of the slurry sticks to the walls of the kiln, acting as insulation to prevent the heat from burning holes, or "hot spots," in the kiln walls. The slurry that sticks to the inside walls of the kiln is referred to as "coating." When it becomes necessary to repair the brick underneath, the coating is "barred" down. This is done by workers who use long iron bars that enable them to remove the coating without standing under the loose coating that could fall on them.
The appellee was injured during the barring process, when a piece of coating fell on him and injured his back. As a result of the injury, the appellee commenced a personal injury action, naming as defendants *Page 928 
the Fuller Company, Michael F. McCarthy, who was plant manager, Kenneth L. Farmer, who was superintendent of operations at the plant, Delbert W. Hyde, who was in charge of plant safety, William P. Lee, who was superintendent of plant operations, Raymond J. Sims, who was in charge of transportation and yard foreman at the plant, and several unnamed fictitious parties. The trial court subsequently dismissed the Fuller Company as a party because it had not manufactured, sold, or installed the kiln. But, appellee amended his complaint to substitute Vulcan Iron Works, Inc., for the fictitious entity "who or which manufactured the rotary cement kiln."
Following the trial, the jury returned a verdict in favor of appellee in the amount of $225,000, and against Hyde, Lee, and Sims. (Michael McCarthy was never served with a copy of the complaint and was dismissed by the trial court the day of the trial.) The jury found in favor of Farmer and against appellee.
The trial court entered a judgment against Hyde, Lee, and Sims in the amount of $207,500, plus costs ($17,500 having been deducted from the amount of the jury's verdict because of a pretrial settlement paid by Vulcan Iron Works to appellee). Judgment was also entered by the trial court in favor of Farmer, against appellee.
Hyde, Lee, and Sims filed a motion for J.N.O.V., or in the alternative, for a new trial. That motion was denied by the trial court, and this appeal followed.
Appellee, while recognizing that "[t]he general rule is that evidence of repairs or alterations made or precautions taken by defendant after injury to plaintiff in an accident is not admissible to show the defendant's antecedent negligence," nevertheless, asserts that the admission into evidence of his Exhibit No. 11 was justified under the circumstances because the appellants raised the issue of the cement company's subsequent accident record in their opening statement. Exhibit No. 11 was the "Job Safety Analysis" for removing coating in the kiln, which was revised three months after the accident. The opening remarks of appellants' counsel included the following:
 "Now, May, 1975, Mr. Raymond Sims was the foreman in the yard and transportation department out at Universal Atlas. In years past, Mr. Sims, too, has torn out coating and brick in the kiln when he was a laborer. It's always been done the same way, and the only disabling accident or disabling injury or lost time injury was Mr. Wages' injury." (Emphasis added.)
Appellee contends:
 "The statement by defendants' counsel clearly had the effect of improperly influencing the jury and leading them to believe that there had been no other accidents without clarifying one obvious explanation as to why there had been no other accidents, i.e. there had been changes in safety procedures."
At the time Exhibit No. 11 was offered, the following occurred:
"MR. PITTMAN: You better mark this (indicating).
 "Whereupon, document was marked Plaintiff's Exhibit No. 11 for identification.)
 "Q. Let me show you a document that has been marked for identification as Plaintiff's Exhibit No. 11. What is —
"MR. TATE: Can I look at it?
"MR. PITTMAN: Yes, sir.
"* * *
"THE COURT: What's the problem? What's your theory?
 "MR. PITTMAN: We have got several. One is, is that the one that was in existence at the time of the accident, just a few months before the accident, did not have this section (indicating) in there.
 "So, I think since they say it was in effect but not written, we have the right to show that they ought to make the changes, number one.
 "Number two, in opening statement they made the statement that there hadn't been any accidents, they have *Page 929 
been talking about forever and ever, and that may be the reason.
"I don't know.
 "MR. LANNING: A response to their statement, in their opening statement, they said they never had any other accidents in this kiln.
"THE COURT: It tells how horrible they are?
 "MR. LANNING: Right here (indicating), Judge, it says to keep a safe distance from the coating while the coating is being barred down.
 "That's the first time they ever put that in there, was after the accident; and they've said in their opening statement that there had not been any other accidents out there other than Robert's.
 "We have a right to put this (indicating) into evidence to show that that's one of the reasons why they haven't had any other accidents out there.
 "MR. TATE: That doesn't make any sense. We put that in there after.
 "MR. LANNING: Sure it does. Ya'll said there hadn't been no other accident out there before or since.
 "MR. TATE: I want to make an objection to that exhibit; that it is subsequent to the accident; it does not fall within the exceptions of the rule.
 "It is not being introduced to show the control of the premises; not shown to be introduced to show the conditions of the place at the time of the accident; certainly not introduced at this time to impeach the witness, or as part of the res gestae.
"THE COURT: Overruled.
"MR. FLOWERS: We except.
"THE COURT: You have an exception."
A portion of Delbert Hyde's testimony concerning that revision of the 1951 "Job Safety Analysis" after appellee's injury in 1975 appears in the record as follows:
 "Q. Mr. Hyde, before we left, I handed you a new Plaintiff's Exhibit, No. 11, and asked you if you could identify that.
"Could you tell us what that is?
"A. Yes. That's a job safety analysis.
 "Q. Is that a similar document to the one we just looked at that was in effect starting in 1951 going up through the time of the accident, similar type thing, just a little bit different form?
"A. Yes.
"Q. Okay. What is the date on that one (indicating)?
"A. August 12, 1975.
 "Q. About 3 months after Robert Wages' accident, which was May the 27th, 1975?
 "A. Well, May the 27th, 1975 to August 12th, 1975; that's the difference in the dates.
"Q. Now, what job does that concern itself with?
"A. Removing coating from kiln.
 "Q. Is that basically a job analysis that concerns itself with the same type operation as stated in Plaintiff's Exhibit No. 2, which was the 1951 document, concerning the same type of work?
"A. Yes, as you said in the beginning, it's similar.
 "MR. PITTMAN: We would offer Plaintiff's Exhibit No. 11 at this time.
"* * *
 "Q. So, following this accident, you updated the '51 job safety analysis?
"A. Yes.
 "Q. Now, in the new one, in August of 1975, did it talk about barring down this coating?
"A. Yes.
 "Q. What did it say about barring down the coating in the August '75 edition of the Safety Analysis, Job Analysis?
 "A. Well, it simply says, "Bar down coating. Start with bars. If unable to remove with bars, use clay spade with 4 foot bar.'
 "And the hazards involved there, are struck by stuff or there is a hazard of slip, tripping and falling, caught between, and so forth.
"* * *
 "Q. Okay. Now, what does it say in the August 12th, 1975 one, opposite bar down coating? *Page 930 
 "A. It says, `Keep safe distance from coating being barred down. Watch footing. Keep hands and body clear of pinchpoints. Stay clear of coating.'
 "A. Okay. Now, in fact, it says, `Top half of coating is barred down ahead of workers. Keep safe distance from coating being barred down. Watch footing. Keep hands and body clear of pinchpoints. Stay clear of coating.'
 "And on this one (indicating), it just talks about, `Wear hardhat, goggles and good shoes'; is that right?
 "A. Well, let me see if we're talking about the same thing.
 "Q. The 1951 one says, `Wear hardhat, goggles and good shoes.'
"A. That's right."
Appellee contends that appellants' opening statement opened the door to evidence of subsequent safety measures, and thus, without Exhibit No. 11, the jury could have been misled as to the reason why there had been no subsequent accidents involving barred down coating at the cement plant.
The general rule in Alabama is that evidence of repairs or alterations made or safety precautions taken by the defendant after plaintiff's injury in an accident is not admissible as tending to show the defendant's antecedent negligence. See,e.g., Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105, 111
(Ala. 1983); Burbic Contracting Co. v. Cement Asbestos ProductsCo., 409 So.2d 1, 3 (Ala. 1982); Alabama Great Southern R. Co.v. Ensley Transfer Supply Co., 211 Ala. 298, 100 So. 342
(1924); Collins v. Mobile O.R. Co., 210 Ala. 234, 97 So. 631
(1923); Going v. Alabama Steel Wire Co., 141 Ala. 537,37 So. 784 (1904). The rationale for this rule is that evidence of subsequent repairs and safety precautions is immaterial and irrelevant on the issue of defendant's antecedent negligence and that, as a matter of public policy, subsequent repairs and safety precautions are to be encouraged in order to prevent future accidents. Indeed, if such improvements or precautions could be introduced against the person making them as proof of his prior negligence, he would be discouraged from improving the place or thing that caused the injury. See BurbicContracting Co. v. Cement Asbestos Products Co., supra;Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 So. 604 (1914);Davis v. Kornman, 141 Ala. 479, 37 So. 789 (1904). Seegenerally Annot., 64 A.L.R.2d 1296, 1303 (1969).
There are, however, certain exceptions to the general rule. In the recent case of Banner Welders, Inc. v. Knighton,425 So.2d 441 (Ala. 1982), this Court stated as follows:
 ". . . Generally, evidence of subsequent repairs is not admissible to establish negligence, although it may be admissible to show identity of ownership, to show control of the locus, to contradict or impeach a witness, or to lessen the weight of an expert witness. Another permissible use may occur where such evidence is offered to establish a condition existing at the time of the accident." (Citations omitted.)
425 So.2d at 444-45. See also Leeth v. Roberts, 295 Ala. 27,322 So.2d 679 (1975); Norwood Clinic, Inc. v. Spann, 240 Ala. 427,199 So. 840 (1941). See generally, C. Gamble, McElroy'sAlabama Evidence § 189.02 (3d ed. 1977).
In the case at bar, appellee did not offer evidence of subsequent safety precautions under any of the exceptions set forth in Knighton. The record plainly indicates that there was no dispute that Universal Atlas owned the premises where the kiln was located and that the appellants had control over the operation and maintenance of the kiln. The record also shows that the appellee was not attempting to impeach or contradict the testimony of Delbert Hyde or lessen the weight of any expert witness's testimony, since appellants did not call any expert witnesses to the witness stand. Finally, the revised "Safety Job Analysis" could not have been offered to establish a condition existing at the time of the accident, since it was undisputed that the kiln contained coating before and after appellee's injury. *Page 931 
Although appellee does not contend that the evidence was admissible under one of the exceptions, he maintains that the portion of appellants' opening statement quoted above raised the issue of the cement plant's subsequent accident record, we cannot interpret that portion of the opening statement as referring to accidents both prior to and after appellee's injury.
Consequently, we conclude that the admission into evidence of Exhibit No. 11 and Delbert Hyde's testimony on cross-examination dealing with subsequent safety precautions taken by the employer following appellee's accident "had no tendency to show negligence on the part of defendants" and should have been excluded, Hertz v. Advertiser Co., 201 Ala. 416,419, 78 So. 794, 797 (1918). We especially find it was highly prejudicial to appellants in this case, as evidenced by the closing argument to the jury made by counsel for appellee:
 "There was a job analysis in effect at the time [of the accident] for the last 23 years that had not been changed, since 1951, the job analysis for going into that kiln had not been changed. It said nothing about look out for the coating, it may fall on you. . . .
 "Three months after the accident, they come out with a new one, and it talked about taking out the coating, top half of coating is barred down ahead of workers. Keep safe distance from coating being barred down.
 "Not great detail, but it warns of the hazard. So, they knew of the hazard.
 "What do you do when you know of the hazard, you eliminate it or minimize it. [Emphasis added]."
During trial, the court also admitted into evidence, over defendants' objections, plaintiff's Exhibit No. 16, and testimony concerning that exhibit, which dealt with eight accidents at other companies which occurred after the date of the accident made the basis of this suit. In admitting this exhibit and testimony, the trial court erred to reversal.
In this case, plaintiff attempted to show that the defendants had knowledge of accidents similar to plaintiff's accident. While evidence of similar accidents to prove that the defendant knew of the danger, or in the exercise of reasonable care should have learned of it, is, under certain circumstances, admissible, "the other happening must have occurred before the injury sued for." McCormick, Evidence § 200, p. 475 (2d Ed. 1972).
Stated differently, "Evidence of other accidents or injuries occurring subsequent to the one in question is not admissible on the issue of knowledge" of the defendant at the time of the accident made the basis of the lawsuit. 65A C.J.S., Negligence
§ 234 (6) (1960).
In Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225,128 So. 389 (1930) (quoting Karr v. State, 106 Ala. 1,17 So. 328), this Court stated:
 "`It is a cardinal rule in the law of evidence that facts and circumstances which, if proved, are incapable of affording a just, reasonable inference or presumption in relation to a material fact involved in the issue on which the jury is to pass, are irrelevant and inadmissible. Testimony, to be admissible, must relate to and be connected with the transaction it is intended to elucidate, and the connection with it must not be remote, or a forced, strained, or mere conjectural conclusion. It must have a reasonable tendency to prove or disprove a material fact in issue.'
"* * *
 ". . . [I]rrelevant evidence . . . may tend to distract the attention of the jury and frequently to prejudice and mislead them. [This] language is most pertinent here."
221 Ala. at 227, 128 So. 389.
We conclude that plaintiff's Exhibit No. 16, which contained evidence of accidents which occurred at other cement companiesafter the date of the accident made the basis of this suit, was inadmissible, and was prejudicial. The judgment entered on the jury verdict, therefore, is due to be reversed on this additional ground. *Page 932 
Accordingly, the verdict and judgment entered thereon must be reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES and BEATTY, JJ., concur.
JONES, J., concurs in the result.