Gaines B. Slade filed an action against the City of Montgomery (city), alleging that the city negligently or wantonly maintained a public street and that, as a result, he was injured. Slade brought the suit after he suffered a knee injury when his foot slipped through the bars of a broken storm sewer grate located adjacent to his residence. The city answered Slade's complaint by denying that it was responsible for Slade's injury. The city also asserted the affirmative defense of contributory negligence. Following discovery, the case was tried before a jury, with a verdict returned in favor of the city. The trial court entered judgment on the jury verdict, and Slade's motion for a new trial was denied. This appeal followed.
On appeal, Slade raises seven issues for our review. The first four issues that will be addressed concern whether the trial court erred in refusing to allow certain testimony and exhibits into evidence. The remaining three issues relate to the propriety of certain instructions given to the jury by the trial court.
Slade's first issue is whether the trial court erred in refusing to allow the deposition of Robert Jones, a city maintenance employee, to be read to the jury. Slade contends that Jones was a managing agent whose deposition was taken pursuant to the terms of Rule 30(b)(6), Alabama Rules of Civil Procedure. Therefore, Slade argues that Jones's testimony should have been admitted "for any purpose," pursuant to Rule 32(a)(2), rather than simply for purposes of impeachment as provided in Rule 32(a)(1).
Rule 32(a)(2) governs the admissibility of the deposition of a person representing an organization when the deposition is taken pursuant to Rule 30(b)(6), by providing:
 "The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose."
The procedure for the taking of a deposition of a representative of a governmental agency, such as the city in this case, is outlined in Rule 30(b)(6), which provides that:
 "A party may in his notice and in a subpoena name as the deponent a . . . governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors *Page 890 
or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. . . . The persons so designated shall testify as to matters known or reasonably available to the organization."
The record in the present case reveals that Slade filed two notices to take a deposition. The first notice, which was filed simultaneously with Slade's complaint, named the "Chief Maintenance Officer or Engineer for Montgomery City streets; and/or other person most familiar with subject of suit" as the deponent. However, no deposition was ever taken as the result of this notice; rather, Slade filed a second notice to take a deposition, naming Robert Jones, Jim Wilder, and Lindel Jones as deponents. The record shows that these three individuals were employees of the city maintenance department. However, at no time did Slade ever file a notice to take a deposition naming the city itself as the deponent as provided in Rule 30(b)(6). Furthermore, neither of the notices to take a deposition contained a description of the matters upon which examination was requested, as provided in Rule 30(b)(6). Therefore, we find that the deposition of Robert Jones, which Slade insists was improperly excluded from evidence by the trial court, was not a deposition of the City of Montgomery taken pursuant to Rule 30(b)(6), and was properly excluded from admission for use "for any purpose" under the provisions of Rule 32(a)(2).
We further note that even if the deposition of Robert Jones had been taken according to the procedure outlined in Rule 30(b)(6), the trial court's refusal to admit the deposition for use for any purpose by Slade is harmless error. In CenturyPlaza Co. v. Hibbett Sporting Goods, Inc., 382 So.2d 7
(Ala. 1980), we were confronted with a situation where the plaintiff sought to introduce the deposition of an agent of the defendant corporation. Although the plaintiff had used the deposition for purposes of impeachment, the plaintiff there, like the plaintiff here, wished to have the entire deposition entered into evidence. The trial court refused, and the issue was raised on appeal. In reviewing the trial court's ruling, we held that the failure of the trial court to admit the deposition of a party for use "for any purpose" under Rule 32(a)(2) does not necessarily and inevitably result in reversible error. In reaching our conclusion that the trial court's refusal to admit the deposition in Century Plaza was not reversible error, we first noted that Alabama Rule 32 is patterned after Federal Rule 32. We also noted that in federal cases involving the application of Rule 32, the courts have concluded that the failure to admit the deposition of a party is merely harmless error, particularly in those situations where, as in Century Plaza, the party had testified and the deposition was used extensively during cross-examination.Century Plaza, supra.
In the present case, Robert Jones was called by Slade to testify as an adverse witness. The record reflects that Slade made repeated use of Jones's deposition for purposes of impeachment, when Jones's testimony at trial conflicted with his answers to questions propounded during the deposition. In light of this, we find that even if Jones's deposition was improperly excluded from evidence, the exclusion was harmless error as to Slade.
The second issue is whether evidence of remedial measures, taken by the city subsequent to Slade's injury, was properly excluded from evidence. The evidence that Slade sought to introduce was the fact that, subsequent to the incident, a city repair crew made alterations to the storm sewer catch basin so that two three-foot grates would be used to cover the catch basin, rather than one six-foot grate.
In his brief, Slade concedes the general rule that evidence of subsequent remedial measures taken by a defendant is inadmissible as tending to show the defendant's antecedent negligence. Hyde v. Wages, 454 So.2d 926 (Ala. 1984). As we noted in Hyde, the rationale for this rule is that evidence of subsequent repairs and safety precautions is immaterial and irrelevant on the issue of a defendant's antecedent negligence and that, as a matter of public policy, *Page 891 
subsequent repairs and safety precautions are to be encouraged in order to prevent future accidents. Indeed, if the improvements or precautions could be introduced against the party making them as proof of prior negligence, that party would be discouraged from improving the place or thing that caused the injury. Hyde, supra. Nevertheless, Slade argues that the evidence in question was due to be admitted as an exception to the general rule.
The exceptions to the general rule of inadmissibility of evidence of subsequent repairs were noted by this court inBanner Welders, Inc. v. Knighton, 425 So.2d 441 (Ala. 1982), where we stated:
 "Generally, evidence of subsequent repairs is not admissible to establish negligence, although it may be admissible to show identity of ownership, to show control of the locus, to contradict or impeach a witness, or to lessen the weight of an expert opinion. Another permissible use may occur where such evidence is offered to establish a condition existing at the time of the accident." (Citations omitted.)
The admissibility of evidence of subsequent remedial measures offered for one of these purposes depends on three factors: (1) whether the purpose is material, that is, at issue in the case; (2) whether it is relevant to the issue, that is, whether the evidence tends to prove the purpose for which it is offered; and (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect. Holland v.First Nat'l Bank of Brewton, 519 So.2d 460 (Ala. 1987). Furthermore, the burden is on the party seeking to admit evidence of subsequent remedial measures to establish materiality, relevancy, and probative value in excess of prejudicial effect. Holland, supra.
In the present case, we find that Slade did not offer evidence of subsequent repairs under any of the exceptions set forth in Knighton. Here, the city acknowledged that there was a six-foot grate covering the storm drain in front of Slade's home on the date that Slade's injury occurred. The city further admitted that it had a duty to properly maintain the street and the storm sewer catch basin, including the grate in front of Slade's home (qualifying its admission, however, to the extent that it claimed it did not have a legal duty creating liability on the part of the city to someone injured by the grate before the city had notice that there was a defective condition).
Clearly, because of the city's admission of these facts, the issues of ownership and control were not in controversy at trial. Also, there was no testimony at the trial that conflicted with the evidence Slade sought to introduce, so as to make it admissible for purposes of impeachment. Furthermore, the city's admission that a six-foot grate was in place removed from controversy the conditions existent at the time of the injury. In view of this, we find that Slade failed to establish the relevancy, materiality, and probativeness of the evidence that he sought to introduce, and that the trial court, therefore, properly excluded evidence of subsequent repairs made by the city.
Slade's third issue is whether the trial court erred in refusing to allow him to testify as to a conversation he had with a member of the city maintenance department work crew who repaired the broken grate after Slade was injured. Slade contends that this testimony should have been admitted because, he says, during the conversation, the employee made an admission against the interest of the city.
We first note that generally, to be admissible against a principal, declarations of an agent must be made within the scope of the authority conferred upon the agent and must be made while the agent is in exercise of his authority.Mutual Sav. Life Ins. Co. v. Hall, 254 Ala. 668, 49 So.2d 298
(1950). Furthermore, the admissions of a party made directly by him, or through his agent duly authorized to speak for him relative to the subject matter of a suit, are admissible in evidence against that party where they are inconsistent with the claim he asserts in the action. Dixie Elec. Co. v. Maggio,294 Ala. 411, 318 So.2d 274 (1975). *Page 892 
Here, the statements as to which Slade wanted to testify were made by James Herndon, a laborer in the city maintenance department. Although the city did admit, in the pretrial order, that Herndon was, at the time of the incident, an agent, servant, or employee of the city at all times complained of in the suit, we hold that the trial court did not err in finding that Herndon was not acting within the scope of his authority and that his statements therefore could not be used as an admission against the city's interest. The trial court could have concluded that Herndon was authorized by the city to perform repairs to the city's streets, not to act as its spokesman. Therefore, we reject Slade's argument that he was improperly denied the opportunity to testify as to his conversation with Herndon.
Slade also raises the issue of whether the trial court erred in refusing to allow into evidence a photograph of another damaged six-foot grate that was allegedly located one block from Slade's home. However, Slade has not directed our attention to a ruling by the trial court in the record prohibiting the introduction of the photograph. Therefore, there is nothing before this court demonstrating that the trial court erred.
Next, Slade insists that the trial court improperly instructed the jury on the issue of contributory negligence. Slade argues that the trial court failed to correctly define "contributory negligence" for the jury and that the evidence presented at trial did not merit an instruction on contributory negligence.
In the present case, the record reflects that the trial court defined contributory negligence for the jury in the following manner: "Contributory negligence, of course, is negligence on the part of the plaintiff, Mr. Slade, which proximately contributed to the alleged injury." Slade asserts that contributory negligence should have been defined for the jury as consisting of: (1) knowledge by the plaintiff of a dangerous condition; (2) the plaintiff's appreciation of the danger; and (3) thereafter, the plaintiff's failure to exercise reasonable care.
In Cooper v. Bishop Freeman Co., 495 So.2d 559 (Ala. 1986),overruled on other grounds, Burlington N. R.R. v. Whitt,575 So.2d 1011 (Ala. 1990), we pointed out that this court has continued to recognize a distinction between assumption of risk and contributory negligence as defenses to actions in simple negligence. We further noted in Cooper that, in Alabama, the term "assumption of risk" has been used to describe a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk. The elements of assumption of risk are: (1) knowledge by the plaintiff of the condition; (2) appreciation by the plaintiff of the danger under the surrounding conditions and circumstances; and (3) the plaintiff's failure to exercise reasonable care in the premises, and, with such knowledge and appreciation, the plaintiff's putting himself into the way of danger. BaptistMedical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972). On the other hand, contributory negligence, in the context of actions in simple negligence, is negligence on the part of a plaintiff that proximately contributes to the plaintiff's injury. Cooper, supra.
At trial, the city was not attempting to make use of the assumption of risk defense; rather, the city was attempting to assert the affirmative defense of contributory negligence as a defense to a simple negligence action. The record reveals that Slade testified that, although he was walking in the gutter at the edge of the street, he had no reason to feel that he needed to be careful. Furthermore, the evidence revealed that Slade occasionally mowed the grass around the location of the sewer grate and that Slade or other members of his family placed their garbage can on the curb directly above the sewer grate approximately twice each week. Although Slade was not under a duty to keep a vigilant watch for unknown defects and obstructions that cannot be observed by *Page 893 
the use of ordinary care, he was required to exercise such ordinary care as the situation on the whole would lead a reasonably prudent person to observe in respect to conditions immediately ahead. See Jacks v. City of Birmingham, 268 Ala. 138, 105 So.2d 121 (1958). In view of the above, we find no error in the trial court's instructions to the jury on the issue of contributory negligence.
The penultimate issue raised by Slade in his appeal is whether the trial court erred in refusing to instruct the jury that the city had a duty to inspect city sewer grates. Municipal liability is governed by § 11-47-190, Ala. Code 1975, which provides, in relevant part:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person . . . unless the said injury or wrong was done or suffered through the neglect, carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body. . . ."
Clearly, § 11-47-190 does not impose upon a municipality a duty to inspect. Furthermore, we can find no prior cases holding that municipalities are under an affirmative duty to seek out defective conditions and rectify them. The cases cited by Slade merely address issues of whether there was constructive notice on the part of the municipality. Here, the trial court instructed the jury that Slade could recover if the city had actual notice of a defect or if the defect had existed for such an unreasonable length of time that the city could have obtained notice or knowledge of the defect by the use of ordinary diligence. We find no error in the trial court's failure to give the requested instruction.
The final issue raised for our consideration is whether the trial court erred in refusing to instruct the jury regarding situations in which actual notice is not required. Slade argues that the jury should have been instructed as to those situations where notice to the city of a street defect either is imputed to the city by its failure to inspect or is not required under the circumstances.
The record reveals that the trial court did instruct the jury that notice would be imputed to the city if the defect was shown to have existed for such an unreasonable length of time that the city could have obtained notice or knowledge of the defect by the use of ordinary diligence. Furthermore, the court instructed the jury that notice to its employees is deemed to be notice to the city. Therefore, we find no merit in Slade's final argument that the jury was not instructed as to situations in which notice to the city is either imputed to the city or is not required.
In light of the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.