Inez REYNOLDS, as the Successor Administratrix of the Estate of Wilmer Lampley, deceased, Plaintiff–Appellant,

v.

BRIDGESTONE/FIRESTONE, INC., Defendant–Appellee,

Container Corporation of America, Defendant,

Goodyear Tire and Rubber Company, Defendant–Appellee,

Firestone Steel Products of Canada, a Division of Decor Metal Products, Ltd.; Decor Metal Products Ltd., a Division of TRW, Defendants.

No. 92–6332.

United States Court of Appeals, Eleventh Circuit.

April 28, 1993.

466

Jere L. Beasley, Landis Sexton, Frank M. Wilson, J. Greg Allen, Beasley, Wilson, Allen, Main & Crow, PC, Montgomery, AL, for plaintiff-appellant.

Ronald G. Davenport, Rushton, Stakely, Johnston & Garrett, PA, Montgomery, AL, Scott M. Phelps, Brittin T. Coleman, Brad-

ley, Arant, Rose & White, Birmingham, AL, Frances E. Prell, Burke, Bosselman & Weaver, Chicago, IL, Warren B. Lightfoot, Harlan I. Prater, IV, Lightfoot, Franklin, White & Lucas, Birmingham, AL, for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and RONEY, Senior Circuit Judge.

FAY, Circuit Judge:

This is a product liability action involving a Goodyear tire specifically designed for mounting on a multi-piece rim assembly manufactured by Firestone. Upon the death of Wilmer Lampley, his estate, the appellant/plaintiff, sued Firestone and Goodyear, appellees/defendants, claiming violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), negligent and wanton conduct, and failure to warn. The estate appeals the district court's order granting summary judgment in favor of both defendants on all claims. Because we find genuine issues of fact and misapplication of state law regarding the claims against Firestone, we VACATE the judgment as to Firestone and REMAND the case to district court. We AFFIRM summary judgment for Goodyear.

## FACTS AND PROCEDURAL BACKGROUND

Wilmer Lampley had been employed by Steed Tire Service for six years. By virtue of his training and experience, he was thoroughly qualified to service multi-piece truck rims and his employer thought him to be a very cautious tire changer. On April 6, 1990, an exploding tire and multi-piece rim assembly killed Mr. Lampley. On that day he and a co-worker were assigned to mount and install several recapped tires on a grappling loader at the Container Corporation lumber yard in Banks, Alabama. To repair the right front tire, Lampley disassembled the wheel, separating the rim components and removing the old tire. Using the same rim parts and a retreaded tire, Lampley then reassembled the rim and inflated the tire. An explosion occurred as he was mounting the tire and rim assembly onto the axle of the grappling loader. The rim components separated, causing the tire to rapidly deflate. Under the instant release of thousands of pounds of air pressure, the tire or a rim component struck Lampley. He died immediately.

There are two rim designs available for mounting tires, single piece rims or multi-piece rims. Tires mounted on multi-piece rims require that an inner tube be used to hold the air. Single piece rims do not require inner tubes or locking mechanisms because the tire and rim combine to create an effective seal. The tires manufactured for the different rim designs are not interchangeable. The plaintiff does not dispute that when the explosion occurred Lampley was mounting a Goodyear 5 degree tube-type tire designed specifically for a multi-piece rim, a tire which was not suitable for mounting on a single piece rim. The plaintiff asserts, however, Goodyear knew when it placed this tire into the stream of commerce that the multi-piece rims for which the tire was designed had an inherent design flaw and could unexpectedly separate and explode. Plaintiff claims the tire poses an unreasonable risk of harm to the intended user, since it could only be mounted on the inherently dangerous multi-piece rim.

The plaintiff's brief generally describes the functional design of a multi-piece rim assembly. A rim assembly consists of three steel parts: the rim base, the continuous side ring, and the lock ring. The rim base has a fixed flange on one side which is designed to hold the bead of the tire in place. The continuous side ring and the lock ring fit onto the opposite side of the rim base. The continuous side ring is a removable flange. The tire is mounted by sliding it over the side of the rim base opposite the fixed flange. After the tire is pushed over the rim base, the continuous side ring is placed over the rim base and affixed to it by fitting the lock ring into the gutter on the rim base; the lock ring acts as a wedging or interlocking mechanism to hold the continuous side ring in place. If the lock ring is not fully engaged in the

gutter, the pressure of the inflated tire can cause the mechanism to separate with a tremendous explosion at any time after inflation. The rim assembly is loose until the tire is inflated and the pressure forces the tire bead against the side flanges. While the tire is being inflated, the interlocking mechanism is intended to hold the tire on the assembly and keep the continuous side ring in place.

There are apparently several configurations for multi-piece rim assemblies on the market and Firestone manufactures at least two different designs. The plaintiff and Firestone agree that the components here were mismatched, both when Lampley disassembled and when he reassembled the wheel. The rim assembly here consisted of a 5 degree rim base, a FL 5 degree continuous side ring, and a FL lock ring. The FL 5 degree continuous side ring can be used with either a 5 degree rim base or a FL rim base. The problem Lampley encountered was that his FL lock ring was not designed to be used with a 5 degree rim base. The FL lock ring has a "toe" that is about ½" shorter than the 5 degree lock ring and is designed to be used with the FL rim base.

In the opinion of plaintiff's expert witness, Lampley's death was caused by the design flaw of the multi-piece rim system and the combination of the mismatched components. Because the inflated tire was pressing against the outside of the continuous side ring, he said it would have erroneously appeared to Lampley that the short toe lock ring was fully engaged. The expert indicated that the explosion occurred because the bead of the tire got caught on the toe of the lock ring, thus pushing it out of the rim base gutter hook. The expert further stated that the lack of a positive locking system presents an inherent design flaw, and that multi-piece rims have a propensity to explode even when the recommended lock ring is used. Firestone's expert testimony, on the other hand, indicated that the mismatched parts were safe and that Lampley's failure to correctly seat the lock ring in the rim base gutter hook caused the explosion. The expert contended that partial engagement of the lock ring would have been obvious to an experienced tire changer like Lampley.

Firestone did provide Steed Tire Service with an abundance of literature, including wall charts and safety manuals, warning of the dangers of mismatched or improperly assembled multi-piece rims. The plaintiff does not deny that Steed passed these warnings on to Lampley. Firestone also asserts that the subject components were stamped with information identifying their type, size, manufacturer and date of production.

Wilmer Lampley's estate brought suit against Firestone and Goodyear. After several amendments to the complaint, the plaintiff ultimately claimed that Firestone had violated the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), and that Firestone negligently and wantonly placed the multi-piece rim assembly on the market and failed to warn Lampley of the dangers involved in using the rim. Firestone moved for summary judgment on the grounds that Lampley assumed the risk of his injury and that any duty to warn had been discharged by the warnings given to Steed Tire Service. The district court entered summary judgment for Firestone holding, as a matter of law, that Lampley assumed the risk of his injury and that Firestone had discharged its duty to warn because Firestone had a reasonable belief that Lampley's employer would advise him of the dangers associated with the rim assembly.

The plaintiff claimed Goodyear negligently and wantonly placed its tire on the market and failed to warn Lampley of the imminent dangers involved in using its tire with a multi-piece rim. The plaintiff also claimed Goodyear was liable under AEMLD. Goodyear moved the district court for summary judgment. Without making a finding of fact or law, the court assumed that multi-piece rims are unreasonably dangerous and defective in design, and held in favor of Goodyear because the plaintiff presented no evidence of a defect

in the tire.[1] The court thus declined to accept plaintiff's theory that Goodyear could be held liable for marketing tires particularly designed for mounting on an inherently dangerous rim assembly. The court also held that the tire did not cause the deceased's injury because the tire exploded due to the defective rim and rings. These findings are supported by Alabama law, which dictates that the manufacturer of a non-defective component part is not liable merely because the part is used in combination with another manufacturer's defective component that results in an unreasonably dangerous completed product. The court further held the law imposed no duty on Goodyear to warn Lampley because he already knew of the dangers associated with mounting tires on a multi-piece rim.

The plaintiff appeals the district court's final judgments for Firestone and Goodyear.

## DISCUSSION

### The Standard for Summary Judgment

In a summary judgment ruling we review de novo the district court's determination and application of Alabama law. *Salve Regina College v. Russell,* — U.S. —, —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). We apply the same legal standards as those that controlled the district court. *Warrior Tombigbee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). Summary judgment should be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). Where a jury trial is requested, the district court is not free to decide factual issues, and if any material issues are present in the record, the court must deny the motion and proceed to trial. *Warrior,* 695 F.2d at 1296. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no dispute as to any material fact in the case. *Warrior,* 695 F.2d at 1296. " 'In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the [non-moving] party' " and resolve " 'all reasonable doubts about the facts ... in favor of the non-movant.' " *Id.* (citation omitted).

Applying these principles to the present case, we find no error in granting summary judgment for Goodyear. However, we find the district court did err in granting summary judgment for Firestone because genuine factual issues exist and the court misapplied state law in ruling that Lampley had assumed the risk of injury. The assumption of risk defense should not have been reached in this case. Further, the court misperceived the issue in holding that Firestone discharged its duty by warning Steed Tire Service. The question raised is whether the warning was adequate.

### "Unreasonably Dangerous" is a Jury Question

As the moving party, Firestone bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. We find Firestone failed to meet its burden and was not entitled to judgment as a matter of Alabama law. To establish liability under the AEMLD the plaintiff must show (1) the defendant placed a defective product on the market which was unreasonably dangerous and which caused injury or damage; (2) the defendant was engaged in the business of selling the product; and (3) the product was expected to and did reach the user or consumer without substantial change in condition. *Casrell v.*

---

1. The plaintiff claimed Goodyear was liable under the AEMLD because it placed a tire on the market specifically made for multi-piece rims knowing the extremely dangerous nature of these rims. Therefore, plaintiff reasoned, the tire itself became imminently dangerous because it could only be used in conjunction with an inherently dangerous rim.

*Altec Industries, Inc.*, 335 So.2d 128, 132–33 (Ala.1976). Alabama defines a defect as "that which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose." *Id.* at 133. The question of "[w]hether a product is 'unreasonably dangerous' is for the trier of fact." *Id.* It matters not whether a jury finds the product dangerous by design or defect, so long as they determine the product is dangerous when used as it was intended to be used. *Id.*

■ Although the district court found Firestone presented no evidence to refute the plaintiff's AEMLD claim, it nevertheless held Firestone was entitled to summary judgment based on the affirmative defense of assumption of risk. Implicit in this approach is a recognition that the plaintiff has established a prima facie case. This is consistent with the record. Plaintiff's expert stated that the multi-piece rim assembly has an inherent design flaw and that even correctly matched components have a propensity to explode. Plaintiff's expert testified in deposition that the explosion was caused by the design flaw of the system as a whole and the mismatched components. In contrast, Firestone's expert submitted that these parts could be used together safely and that it was Lampley's failure to properly and completely assemble the parts that caused the explosion. Plaintiff's evidence is sufficient for a jury to find the multi-piece rim to be unreasonably dangerous and presents a real dispute as to the cause of Lampley's death. Clearly, this resolution is for the factfinder.

### *Firestone's Defense of Assumption of Risk*

■ Firestone raised a defense of contributory negligence, which would bar the plaintiff's recovery under Alabama law. Assumption of the risk is a form of contributory negligence. It is a valid defense to an AEMLD claim, *Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1339 (Ala.1991), when the plaintiff "fails to exercise due care by placing himself or herself into a dangerous position with appreciation of a *known* risk." *Slade v. Montgomery*, 577 So.2d 887, 892 (Ala.1991) (emphasis added). The defense requires proof of three elements: "(1) knowledge by the plaintiff of the condition; (2) appreciation by the plaintiff of the danger or risk posed by that condition; and (3) a voluntary, affirmative exposure to the danger or risk." *Sprouse v. Belcher Oil Co.*, 577 So.2d 443, 444 (Ala.1991).

■ The district court found Lampley was an experienced tire changer who was made aware of the dangers associated with mounting tires on a multi-piece rim through extensive training and abundant warnings. A general awareness of danger, however, is not sufficient to establish that one assumed the risk of injury. A plaintiff's state of mind is judged by a subjective standard and it is the factfinder who determines whether the plaintiff had actual awareness of the risky condition. *McIsaac v. Monte Carlo Club, Inc.*, 587 So.2d 320, 324–25 (Ala.1991). The critical issue is Lampley's knowledge at the time of the explosion, provable in this case only by circumstantial evidence. Although Firestone has clearly shown Lampley appreciated the potential risk or danger in using mismatched or improperly assembled rim parts, we see no evidence showing Lampley actually knew these component parts were mismatched when he reassembled them. On the contrary, there is deposition testimony that Lampley was a careful worker who followed instructions. From this a reasonable jury could infer that Lampley properly assembled the components and that those parts appeared to him to be functioning correctly before he fully inflated the tire. There is no evidence that he knew the parts were actually mismatched. Consequently, we find Firestone has not met its burden for summary judgment as to the defense of assumption of risk.[2]

---

**2.** The district court further held that because Lampley assumed the risk of injury, Firestone was not liable for the claims of negligent and wanton conduct. For the reasons already stated, we reverse this decision as well and also note that assumption of risk is no defense to wantonness. *Blount Brothers Constr. Co. v. Rose*, 274 Ala. 429, 149 So.2d 821, 830 (1962).

### Adequacy of the Warning is a Jury Question

If a manufacturer places goods on the market that are imminently dangerous when put to their intended purpose and the manufacturer knows or should know that the goods can create danger when used in their customary manner, the manufacturer must exercise reasonable diligence to make such danger known to the persons likely to be injured by the product. *Ford Motor Co. v. Rodgers*, 337 So.2d 736, 739 (Ala.1976). "Where a warning is necessary, the warning need only be one that is reasonable under the circumstances and it need not be the best possible warning." *Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala.1987). There is "a duty to warn of those dangers which the user would not be aware of *under the particular circumstances* of his use of the product." *Id.* (emphasis added). A duty to warn of a dangerous condition in the workplace can be discharged by informing the employer of the dangerous condition. *Cook v. Branick Mfg., Inc.*, 736 F.2d 1442, 1446 (11th Cir.1984) (interpreting Alabama law); *Purvis v. PPG Indus., Inc.*, 502 So.2d 714, 719 (Ala.1987).

The district court held Firestone discharged its duty by providing Lampley's employer with multiple warnings. The court found that it was reasonable for Firestone to rely upon Steed Tire Service to advise Lampley of the dangers surrounding multi-piece rim assemblies. This holding misperceives the issue. The question plaintiff raises is whether Firestone adequately warned Steed Tire Service. It is for the factfinder to determine if the content and the methods used to convey the warnings to Steed were adequate under the circumstances and in light of the danger. *Rhodes v. Interstate Battery System, Inc.*, 722 F.2d 1517, 1519 (11th Cir.1984); *Deere & Co. v. Grose*, 586 So.2d 196, 199 (Ala.1991). Given that Lampley reassembled parts which were mismatched when he began

working, and that he was repairing the tire in the field where he had no access to matching charts or safety manuals, a jury could determine the warnings given were inadequate because the parts themselves should have been imprinted with a warning or color-coding to prevent mismatching.[3] Summary judgment on this ground was therefore improper.

### The Claims Against Goodyear

We find no error in the district court's grant of summary judgment for Goodyear. Plaintiff submitted no evidence that the tire itself failed during the accident. Nor did the plaintiff allege that any design flaw or defect in the tire caused the accident. In fact, plaintiff contended in response to Firestone's interrogatories that the tire exploded because of the defective rims and rings. By failing to show causation, plaintiff has not met its burden to establish an element essential to an AEMLD claim or to claims of negligent and wanton conduct.[4] Summary judgment is proper, therefore, as to these claims.

As to the failure to warn claim, plaintiff argues that Goodyear is liable because it failed to warn users that its tire was imminently dangerous when put to its intended purpose, namely when mounted on a defective multi-piece rim. The purpose in placing a duty to warn on the manufacturer is to familiarize the user with dangers of which he may be unaware. *Gurley*, 505 So.2d at 361. So if the user is aware of the dangers associated with the product, the manufacturer has no duty to warn. The evidence shows Lampley was an experienced tire changer who was aware of the dangers associated with mounting tires on multi-piece rims. Plaintiff has presented no evidence to make this an issue of fact. Goodyear, therefore, owed no duty to warn Lampley of the dangers in using multi-piece rims and summary judgment was properly granted.

---

**3.** We do not express an opinion as to the adequacy or inadequacy of the warnings given.

**4.** A manufacturer may be liable to an injured party where its product is defective due to negligent or wanton design and the defect caused the injury. *See Pouncey v. Ford Motor Co.*, 464 F.2d 957, 961 (5th Cir.1972).

■ The plaintiff argued that because the Goodyear tire and multi-piece rim have no use other than in combination with each other, and because the tire and rim are unreasonably dangerous when used in combination, the Goodyear tire is unreasonably dangerous. The district court held, as a matter of law, the Goodyear tire was not a defective product within the meaning of the AEMLD. Plaintiff asserts these facts present an issue of first impression and has moved this court to certify the question to the Supreme Court of Alabama. We adopt the district court's reasoning on this point: "The manufacturer of a non-defective component tire, cannot be held liable for injuries caused by a product it did not manufacture, sell, or otherwise place in the stream of commerce. *Sanders v. Ingram Equipment, Inc.*, 531 So.2d 879, 880 (Ala. 1988)." Unlike Firestone, Goodyear would have no duty to give a warning concerning a mismatched or defective rim manufactured by Firestone. Had the plaintiff wanted to argue for a change in well-settled state law, the case should have been filed in an Alabama court. We will not extend state law and the motion to certify is denied.

## CONCLUSION

For the foregoing reasons, we VACATE IN PART and AFFIRM IN PART. As to Firestone, we VACATE the judgment and REMAND for further proceedings consistent with this opinion. As to Goodyear, we AFFIRM the judgment of the district court.